MONROIG, DEMANDANTE Y APELANTE, *v.* CÓRDOVA ET AL., DEMANDADOS Y APELADOS.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección 1ª., en causa sobre tercería de bienes inmuebles.

No. 1358.—Resuelto en mayo 2, 1916.

DESCRIPCIÓN DE FINCAS—CABIDA—LINDEROS—COLINDANTES.—La regla general al determinar lo que ha sido incluído en un traspaso es que las referencias generales respecto a cabida están subordinadas a los linderos más ciertos que describen el sitio de los propietarios colindantes, los que son *precisos o pueden ser determinados. Veve* v. *Sánchez,* 226 U. S. 235.

TERCERÍA DE BIENES INMUEBLES—DESCRIPCIÓN DE FINCAS—CASO DE VEVE V. SÁNCHEZ, 226 U. S. 235—LÍMITES EXTERIORES.—Distinguiendo este caso del de *Veve* v. *Sánchez,* 226 U. S. 235, se resolvió: que hay disparidad entre uno y otro. En aquel caso las 134 cuerdas reclamadas por Sánchez estaban dentro de los límites exteriores de la finca hipotecada, mientras que en el presente no es posible afirmar que las 7 cuerdas de terreno que se reclaman y las cuales colindan por el oeste con las 24 cuerdas hipotecadas, estuviesen comprendidas dentro de la finca hipotecada, por la razón de que colindando por su lado con el mismo dueño, no puede sentarse la afirmación de que las referidas 7 cuerdas estuviesen radicadas dentro de los límites exteriores de la finca hipotecada de 24 cuerdas.

HIPOTECA—INTERPRETACIÓN DE DOCUMENTOS—PRUEBA ORAL.—Cuando al interpretar un documento escrito sobre hipoteca aparece que a una finca de determinado número de cuerdas se le reconoció ese número, y una colindancia con cierta persona sin especificación de monumento artificial o natural alguno, se fijó de acuerdo con la medida especificada en el título, método éste que permitió al par que reconocer la totalidad de los derechos del comprador en una venta judicial de la finca hipotecada, los del colindante indicado, no puede decirse que por prueba oral se variaran los términos del documento escrito.

Los hechos están expresados en la opinión.

Abogado de la apelante: *Sr. Frank Antonsanti.*

Abogado de los apelados: *Sr. Antonio Trujillo Güil.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

El presente es un pleito sobre tercería de bienes inmuebles. Josefa O. viuda de Monroig, entabló una demanda en la Corte de Distrito de San Juan alegando, en resumen,

que en cierto pleito seguido por Ramón Córdova contra Ramón Solla, en cobro de pesos, el demandante Córdova había embargado como de la propiedad del demandado Solla cierta finca rústica de siete cuerdas que pertenecía a la tercerista viuaa de Monroig, por haberla ésta adquirido en la ejecución de dos hipotecas que gravaban dos fincas del indicado Solla parte de las cuales era la embargada por el expresado Córdova.

Uno de los demandados dentro de este pleito de tercería, Ramón Córdova, contestó la demanda, alegando, en resumen, que la finca por él embargada era distinta de las ejecutadas por la demandante. Y así quedó trabada la contienda en este pleito que fué resuelto, una vez practicadas las pruebas, en contra de la demandante. La dicha demandante estableció entonces el presente recurso de apelación.

La prueba de la demandante consistió en la escritura de la venta judicial que hizo a su favor el márshal de la Corte de Distrito de San Juan, en la declaración de los testigos Dionisio Bausó, Antonio Monroig, Plácido Ripoll y Frank Antonsanti y en un plano.

Por la escritura se viene en conocimiento de que Ramón Solla era dueño por título de herencia de dos fincas rústicas que se describen así:

"*Primera:* Terreno de altura con una cabida de veinte y cuatro cuerdas, equivalentes a nueve hectáreas, cuarenta y tres áreas, veinte y nueve centiáreas y treinta y seis centésimos, en el barrio de Hato Tejas, del término municipal de Bayamón, lindando con fincas por el norte, de Antonio Monroig, hoy de su sucesión; por el sur, de Eulogio Rivera, hoy de su sucesión; por el este, de Ramón A. Solla y de Antonio Monroig, hoy su sucesión, y por el oeste, de Eulogio Rivera, antes, hoy de la sucesión de Antonio Monroig.

"*Segunda:* Terreno con una cabida de nueve cuerdas, equivalentes a tres hectáreas, cincuenta y tres áreas, y setenta y tres centiáreas, en el barrio de Hato Tejas, del término municipal de Bayamón, y lindando con fincas, por el norte y el este, de Antonio Monroig, hoy de su sucesión; por el sur, de Eulogio Rivera, hoy de su sucesión, y por el oeste de la Sucesión Solla."

También se consigna en la escritura que Solla hipotecó las fincas descritas a favor de Don Pedro Fernández Umpierre, que éste vendió las hipotecas a la demandante y apelante, y que no habiendo Solla satisfecho a su debido tiempo la deuda garantida, la demandante y apelante ejecutó las hipotecas y habiéndose anunciado la venta de las fincas hipotecadas en pública subasta, la repetida demandante y apelante las adquirió por cierta suma de dinero que se abonó a su crédito.

El testigo Bausó, dijo que era agrimensor y empleado de la Central Juanita, perteneciente a la Sucesión Monroig; que recibió orden de su jefe de practicar la mensura de unas fincas de Ramón Solla y que cumplió en efecto dicha orden. Su declaración ocupa cinco páginas en maquinilla y toda ella tiende a demostrar que Solla le indicó las colindancias y le habló siempre solamente de dos fincas. La mensura dió por resultado que la finca de nueve cuerdas las tenía en efecto y que la finca de veinte y cuatro se componía de treinta y una.

Declarando el testigo, se introdujo como prueba el plano levantado por el mismo. En él aparece deslindada una extensión de terreno que comprende cuarenta cuerdas dividida en dos porciones—una de nueve y otra de treinta y una. Figura una casa.

El testigo Monroig declaró amplia y detalladamente con respecto a cierta transacción que tuvo concertada con Solla sobre la compra de sus tierras colindantes con la Central Juanita; que mandó medir dichas tierras; que siempre entendió que se trataba de dos fincas; que sabía que las fincas estaban gravadas y que en la transacción se había tomado en cuenta tal hecho encargándose el comprador del pago del gravamen y entregando al vendedor, además, cierta suma de dinero. No se pudo llegar a un acuerdo con respecto a la cantidad que debía pagarse en efectivo y el contrato fracasó. El declarante insistió en que Solla siempre se refe-

ría a dos fincas y nunca le habló de que tuviera una tercera finca en aquel sitio.

El testigo Ripoll fué otro empleado de la Central Juanita que acompañó al agrimensor Bausó a practicar la mensura. Corrobora en todas sus partes lo dicho por Bausó.

El testigo Antonsanti, abogado, habla extensamente del contrato de compraventa que estuvo a punto de celebrarse entre la Central Juanita y Solla. Toda su declaración tiende a demostrar que Solla en todas sus conversaciones con el testigo, admitía que sólo tenía en aquel sitio dos fincas, una de 24 y otra de 9 cuerdas.

La prueba del demandado Córdova consistió en las declaraciones de los testigos Ramón Solla, Pedro Fernández y Nicanor Cepero.

Solla en su declaración reconoce que intentó vender todas sus tierras a la Central Juanita; que se practicó la mensura, y que en efecto indicó las colindancias en globo por que se iba a vender todo, pero niega que dijera que sólo tenía dos fincas. Sostiene que además de las dos fincas hipotecadas que heredó de sus padres, tenía otra pequeña finca en donde está la casa que vino a su poder por herencia de una parienta suya, siendo esta pequeña finca la embargada por Córdova. La descripción de esa finca de siete cuerdas es como sigue:

"Rústica de altura, en la cual hay una casa de madera, terrera, techada de zinc, cuyas colindancias son como siguen: por el norte propiedad de Solla y Sucesión de Solla; por el sud con propiedad de Eulogio Rivera; por el este con propiedad de Eulogio Rivera y por el oeste con propiedad de Ramón Solla. Siendo la cabida de la finca descrita 7 cuerdas."

Solla explica, además, que no habiendo llegado a un acuerdo con la Central Juanita, por no haberse ésta avenido a darle en efectivo la cantidad que él exigía, la central compró las hipotecas y ejecutó las fincas gravadas, pero insiste siempre en que sólo dos de sus fincas estaban hipotecadas.

La declaración del testigo Fernández, primitivo dueño de las hipotecas, hace referencia al hecho de que estaba enterado de la transacción entre Solla y la Central Juanita, sin conocer sus detalles. ''Que Solla le dijo que tenía esa negociación, y en virtud de ella los Sres. Monroig se entendieron con el declarante.''

Por último, Nicanor Cepero, dice que le consta la existencia de las tres fincas por haber trabajado por años en ellas. Describe la finca de siete cuerdas habiendo conocido residiendo en ella a Doña Josefa Ortiz. Según la declaración de Solla se llamaba Josefa Ortiz la parienta de quien heredó la finca en cuestión.

Tales son, a grandes rasgos, las pruebas practicadas. El juez sentenciador las analizó cuidadosamente y luego se expresó, en su opinión, así:

''La corte no puede con la prueba presentada sentar la conclusión de que dentro del terreno comprendido en las 24 cuerdas, de acuerdo con sus colindancias, figura también el terreno objeto de este litigio, porque como colindando como colinda el terreno hipotecado, por el este con Ramón Solla, no tenemos otra base que la medida de las 24 cuerdas para fijar la extensión de la finca hipotecada al Señor Fernández Umpierre. En ausencia de una línea divisoria que deslinde los campos de una manera clara y evidente, debemos presumir que el inmueble afectado termina allí donde terminan las 24 cuerdas. El hecho de que la finca de nueve cuerdas y las 24 con sus colindancias respectivas, hayan sido objeto de un mismo contrato de hipoteca, no quiere decir que todo el terreno comprendido dentro de estas dos fincas quede necesariamente incluído en el perímetro de la propiedad hipotecada. Cada finca tiene sus propias colindancias, y no se ha demostrado que Ramón Solla al hipotecar estas 24 cuerdas hiciese comprender al acreedor Señor Fernández Umpierre que dentro de las colindancias de esta finca estuviese incluído todo el terreno que reclama la parte demandante. El Sr. Solla hipotecó 24 cuerdas colindando con él mismo por el este, y a nuestro juicio la parte demandante sólo tiene derecho a la cantidad de terreno especificada en la escritura, porque no se ha demostrado, por medio de prueba competente y satisfactoria que dentro de las colindancias del inmueble hipotecado, hubiese una mayor cabida de terreno que el que se determina en el contrato de hipoteca.''

Sostiene la parte apelante en su alegato:

1. Que los demandados están impedidos para negar que la parcela de siete cuerdas en litigio está comprendida dentro de la finca objeto de las hipotecas que fué traspasada por el márshal de la corte de distrito a la demandante;

2. Que la sentencia apelada es contraria a la resolución de la Corte Suprema de los Estados Unidos en el caso de *Veve* v. *Sánchez,* 226 U. S. 234;

3. Que la sentencia apelada varía los términos de un documento escrito en virtud de prueba oral;

4. Que el demandado Solla no presentó prueba para establecer su derecho a las siete cuerdas en litigio, y

5. Que la prueba es contraria a las alegaciones.

6. Que la sentencia es contraria a la prueba.

1. Examinemos el primer error. Como puede observarse del extracto de la prueba que dejamos consignado, la parte demandante tendió a demostrar por medio de sus testigos, que Solla siempre se refirió a dos fincas, que nunca habló de la tercera finca embargada por el demandado Córdova. De esto deduce el abogado de la apelante que Solla está impedido de alegar ahora la existencia de la tercera finca. En su declaración Solla reconoce que cuando se trató de vender directamente sus tierras a la Central Juanita, partió siempre de la base de que se iba a desprender de todo el terreno que tenía en aquel sitio. Por eso cuando el encargado por la central de medir las fincas se personó en ellas, le indicó sus colindancias en globo. Pero Solla niega que reconociera que tenía hipotecadas todas sus propiedades e insiste en que sólo dos de ellas, las que había adquirido por herencia de sus padres, estaban gravadas a Fernández. La demandante no se convirtió en dueña por virtud del contrato de compraventa que se planeó primero. La demandante compró las hipotecas, las ejecutó y en subasta pública adquirió lo que estaba hipotecado. Juzgando la prueba, el juez sentenciador creyó cierta la explicación de Solla, y si lo es en efecto, no vemos cómo pueda sostenerse el impedimento alegado

con respecto a Solla. Queda reducida, pues, la cuestión, a una de apreciación de prueba, y como a nuestro juicio no se ha demostrado que la corte de distrito actuara erróneamente, debe prevalecer su criterio.

2. Estudiemos el segundo de los errores señalados. En el caso citado, *Veve* v. *Sánchez, supra,* aparecía que José Avalo Sánchez hipotecó a María Díaz y Siaca una plantación de azúcar conocida por "Bello Sitio" constante de 400 cuerdas. El acreedor hipotecario ejecutó su crédito y finalmente se le adjudicó la finca. Luego Sánchez entabló pleito reclamando cierta porción de terreno de 134 cuerdas de extensión existentes, según él, dentro de los límites de "Bello Sitio" y que, según él, no fué nunca hipotecada. Se midió la finca subastada y adjudicada al acreedor hipotecario y resultó contener 415 cuerdas o sea un exceso menor de un cinco por ciento de lo que resultaba del título. Si se hubiera declarado con lugar la demanda de Sánchez, entonces la finca de 400 cuerdas hubiera quedado reducida solamente a 279. Además, como se ha dicho, la finca reclamada por Sánchez estaba dentro de los límites de la hacienda "Bello Sitio." La Corte Suprema, revocando la sentencia apelada, decidió que Sánchez no tenía derecho alguno. En el resumen de la decisión aparece establecida la siguiente jurisprudencia:

"La regla general al determinar lo que ha sido incluído en un traspaso es que las referencias generales respecto a cantidad (cabida) están subordinadas a los linderos más ciertos que describen el sitio de los propietarios colindantes, los que son precisos o pueden ser determinados." 226 U. S. 235.

En su opinión el juez sentenciador sostuvo que la decisión de la Corte Suprema en el caso de *Veve* v. *Sánchez, supra,* no era aplicable al presente. En efecto, hay disparidad entre uno y otro caso. Como hemos visto, si se hubiera dado la razón a Sánchez su acreedor sólo hubiera obtenido 279 cuerdas cuando Sánchez le hipotecó 400. Resolviendo el caso a favor del acreedor sólo resultaban de más quince cuerdas o sea, como hemos dicho, una porción menor del cinco

por ciento. Por el contrario, si este caso se resolviera a favor de la demandante, por una finca hipotecada de 24 cuerdas se le entregaría una de 31, o sea más de un 25 por ciento.

Pero prescindiendo de la cabida y yendo a la regla que debe prevalecer según la Corte Suprema de los Estados Unidos, o sea la más segura de las colindancias, nos encontramos con que en el caso de *Veve* v. *Sánchez* las 134 cuerdas reclamadas por Sánchez estaban dentro de los límites exteriores de la hacienda "Bello Sitio" que había sido hipotecada, mientras que aquí, como sostiene el juez de distrito en su opinion, pág. 49 de la transcripción, "no es posible afirmar que las siete cuerdas de terreno que se reclaman y las cuales colindan por el oeste con las 24 cuerdas hipotecadas, estuviesen comprendidas dentro de la finca de mayor cabida, por la sencilla razón de que colindando por su lado con el mismo dueño, no puede sentarse la afirmación de que las referidas siete cuerdas estuviesen radicadas dentro de los límites exteriores de las 24."

3. Veamos el tercer error. A nuestro juicio el juez sentenciador no permitió que se variaran por prueba oral los términos de un documento escrito. El documento escrito se interpretó por sus propios términos. A una finca hipotecada de 24 cuerdas se le reconocieron 24 cuerdas, y una colindancia con una determinada persona, Solla, sin especificación de monumento artificial o natural alguno, se fijó de acuerdo con la medida especificada en el título, método éste que permitió al par que reconocer la totalidad de los derechos del comprador en la venta judicial de la finca hipotecada, los del colindante indicado.

Háy una circunstancia que debe hacerse constar y es que generalmente, al fijar la medida de las fincas, se consignan a continuación del número las palabras *más* o *menos* y en este caso nada indefinido se dejó en la descripción.

También debe hacerse constar que dentro de las cuarenta cuerdas que fueron de Solla, según el mismo plano levan-

tado por el encargado de la demandante, existe una casa, y es lo cierto que en la descripción de las fincas hipotecadas no se hace constar, como es costumbre, tal hecho. En cambio en la porción de siete cuerdas embargada por Córdova consta la existencia de la casa.

4. El cuarto de los errores señalados tampoco tiene fundamento, a nuestro juicio. Solla, según su declaración, adquirió las fincas hipotecadas por herencia de sus padres. Dichas fincas estaban inscritas en el registro de la propiedad. La finca de siete cuerdas la adquirió por herencia de una parienta suya. A primera vista se observa que tal vez pueda existir algo anormal en esta adquisición. La parienta vivía con Solla, Solla gastó en su enfermedad y entierro y luego se quedó con la finca. Quizás Solla no sea el único heredero. Quien sabe si debido a esta circunstancia Solla no aclaró su título y por eso no figura inscrito en el registro. Mas sea como fuere, es lo cierto que Solla estaba en posesión como dueño de la finca en cuestión y si jamás hipotecó dicha finca jamás tampoco pudo ser adquirida por la demandante que no tiene, por tanto, personalidad para impugnar el título más o menos legal que Solla pueda tener sobre la misma.

5 y 6. Por virtud de todo lo expuesto, puede concluirse fácilmente que opinamos que no existen los errores Nos. 5 y 6 alegados por la parte apelante. Examinadas las alegaciones y la prueba practicada en su totalidad, no creemos que pueda sostenerse que la prueba, tal como fué apreciada por la corte de distrito, sea contraria a las alegaciones, ni que la sentencia esté en contra de la prueba.

Debe confirmarse la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.