VEVE *v.* SANCHEZ.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR PORTO RICO.

No. 42. Argued November 7, 1912.—Decided December 2, 1912.

While a tract may be so well known by name that it can be described and conveyed without other designation, ordinarily designation by name will yield to the more definite by metes and bounds; and in this case the latter rule should apply.

The construction of the description in a mortgage should not depend on the amount of land owned by the mortgagor but on the specific boundaries.

The general rule in determining what is included in a conveyance is that general calls for quantity must yield to the more certain and locative lines of the adjoining owners which are, or can be made, certain.

Nothing in this case warrants a departure from this long established and necessary rule of title.

In ejectment the plaintiff must recover on the strength of his own title and cannot prove by parol that a part of the land conveyed was not included in the grant; a contrary rule would make every grantee liable to have what had been conveyed to him taken away by word of mouth.

The rule prohibiting written contracts from being varied by parol is not confined to the common law, but was in force in Porto Rico in 1885 and since then.

The statement in a conveyance that the grantor is the owner of the property described estops the grantor from denying his right to convey, and if not the owner at the time his subsequent acquisition inures to the benefit of the vendee.

4 Porto Rico Fed. Rep. 329, reversed.

THE facts, which involve the rights of a mortgagee under a mortgage of land in Porto Rico, are stated in the opinion.

*Mr. Charles Hartzell,* with whom *Mr. Manuel Rodriguez-Serra* was on the brief, for plaintiffs in error.

*Mr. Jose R. F. Savage,* with whom *Mr. Hector H. Scoville* was on the brief, for defendant in error.

MR. JUSTICE LAMAR delivered the opinion of the court.

In 1885 Jose Avalo Sanchez mortgaged to Dona Maria Diaz y Siaca a sugar plantation in Porto Rico known as Bello Sitio, described as containing 400 cuerdas, and bounded on the north, south, east and west by the colindantes, or adjoining land owners, whose names were given. Suit to foreclose was instituted in 1889 and at the end of three years the mortgagee obtained a decree which, how-

ever, instead of ending the controversy, was the beginning of litigation in the Spanish courts which is said to have been the most protracted and bitter in the history of the Island of Porto Rico.

The record of the various proceedings is involved and complicated, but it appears that Mrs. Diaz purchased, at the foreclosure sale, and apparently in accordance with Spanish custom, (4 Wall. 261), was put in possession on October 30, 1891. But before she received the judicial deed, attachments were levied on Bello Sitio, on a lot afterward called Sauri, "in the center of the same" and on certain personalty, as the property of Sanchez. About the same time a concurso of creditors, in the nature of bankruptcy proceeding, was begun against him. The trustee apparently went through the form of taking possession of all property of Sanchez, including Bello Sitio, though without actually evicting Mrs. Diaz. Sanchez himself later instituted proceedings to cancel the mortgage and judicial deed under which Mrs. Diaz claimed title. He failed in this suit, but the other branches of the litigation continued for 16 years and, after the death of Mrs. Diaz, finally terminated in 1907, when the Supreme Court of the Island held that the attachment should be released, the bankruptcy proceedings dismissed, and all the property returned to Sanchez, except Bello Sitio, which was to remain at the disposal, of the heirs of Mrs. Diaz.

Both parties seem to have considered this a decision in their favor—the plaintiff claiming that it adjudged to him everything that was not Bello Sitio, and the defendants that it restored to them all that was included in the mortgage.

In the meantime Sanchez (in 1906) filed a bill in the United States court for Porto Rico, in which, as appears from statements in the opinion of the court, he attacked all of the proceedings in the Spanish tribunals as fraudulent, and asked that the mortgage foreclosure be set

aside and himself declared to be the owner of Bello Sitio. Whether any issue was therein presented, or legally involved, as to the boundaries of the land, cannot, in the absence of a copy of the pleadings, be determined. On demurrer this bill was dismissed for laches and want of equity.

Sanchez then brought the present suit for the recovery of 134 cuerdas of land, (lying within the exterior limits of Bello Sitio), and $60,000 as damages for improvements destroyed, crops removed, and mesne profits, from 1891 to 1907, during which time, he alleges, that the defendants and their ancestor, Mrs. Diaz, had usurped the premises, by means of false and fraudulent claims instituted in the Porto Rican courts. On demurrer the court held that the suit should be treated solely as an action in ejectment.

The defendants plead *res adjudicata,* title by prescription and title under the mortgage foreclosure. We need only consider the question presented by the claim in the answer "that the 400 cuerdas, known as the Hacienda Bello Sitio, includes the several parcels of land described in the plaintiff's complaint."

On the first hearing there was a mistrial. On the second, plaintiff offered evidence to show that between 1878 and 1880, he purchased three small lots forming a part of the tract mentioned in the complaint; that on January 5, 1880, he bought Bello Sitio from Monserrate Garcia, at the same time occupying, as lessee, the lot called Sauri. He admitted that "the land for which he is now suing was in the middle of what was formerly Bello Sitio," but claimed that Mrs. Diaz knew, or ought to have known, that the mortgage, dated May 28, 1885, did not convey Sauri, because he did not then own that place, and did not purchase it until June 15, 1885, three weeks later. There was evidence that, in 1892, during the bankruptcy, a survey was made with a view to marking the lines between Bello Sitio and the land now sued for; that the agent of

Mrs. Diaz was present and assented to the correctness of the survey. But if his admissions at that time could have bound the principal, or if he had authority to establish a new line by parol, the agreement was never executed by any change in possession, the complaint itself alleging that Mrs. Diaz and her heirs had been in possession since 1891. Plaintiff also relied on the records in the Spanish courts, which showed that from the time Mrs. Diaz took possession in 1891, he, his creditors and the trustee in bankruptcy, had persistently claimed that Sauri, and the other land now sued for, formed no part of Bello Sitio, and was not included in the mortgage. On the other hand, the defendants insisted that a single, not a divided tract, was conveyed by the mortgage, which, as translated, described the land as being "a sugar cane plantation known as Bello Sitio . . . composed of 400 cuerdas of land, equivalent to 157 hectares, 21 areas and 59 centiares with its buildings . . . and other appurtenances used in its cultivation. Said land being bounded on the north by the property of Isabel Siaca and by lands of the plantation 'Convento' belonging to Pilar Becerril y Torres; on the east by land of Nicolas Telemaco and by lands of Benigno and Sebastian de Santiago; on the south by the property called 'Ausubal' belonging to the Succession of Alejandrina Becerril y Torres, with lands belonging to Concepcion Lopez and by the property belonging to the Successors of Alberto Western and the Luquillo-Fajardo road; and on the west by lands belonging to Enrique Garcia and those of Nicolas Perez and of Gervasio Rivera."

A plat of Bello Sitio, made in 1907, showed that it contained exactly 415 cuerdas, and the defendants contended that if the 134 sued for were excluded, only 279 would be left, although the mortgage purported to convey 400 cuerdas. The plaintiff denied that the plat made in 1907 correctly represented the land which he had conveyed in 1885, insisting that, excluding Sauri, he bought 400 cuerdas

from Monserrate Garcia, and had conveyed that quantity to Mrs. Diaz. He claimed that if there was any present deficiency, it was due to encroachments by the adjoining land owners. He did not, however, establish what, if any, change had been made, while the surveyor testified that he followed the boundaries of Bello Sitio as indicated by ditches, fences, trees, stakes, and the documents of the adjoining land owners, all of whom were present when the survey was made and assented to its correctness. The land owners were also examined. Some of them had known the property from the date of the mortgage, and others, who were younger, for a shorter time. But all testified that they knew of no change in the lines.

The jury found a verdict for the plaintiff. A motion for a new trial was overruled. The case is here on assignments, which relate to rulings in admitting and excluding testimony, in charging and refusing to charge the jury, and in failing to direct a verdict for the defendants.

The plaintiff's testimony established that he was in possession of Bello Sitio as owner, and of Sauri as lessee when he made the mortgage on May 28, 1885. Three weeks later, he purchased Sauri and established a title on which he was entitled to recover, unless it, and the other three lots sued for, were included in the mortgage which described the property by name (Bello Sitio), by quantity (400 cuerdas) and by colindancias or adjoiners, on the north, east, south and west.

A tract may be so well known by name, that it can be described and conveyed without other designation. And there are cases where, in the sale of a ranch, or of an island, or of a well known plantation, the limits described by name have prevailed, when there was a discrepancy between it and other descriptive terms set out in the same deed. *Lodge* v. *Lee*, 6 Cranch, 237.

Ordinarily, however, designation by name will yield to the more definite description by metes and bounds. In

this case there was nothing to show that "Bello Sitio" was understood to mean or describe a Hacienda of clearly defined limits; and there was no basis for a charge as to the conditions on which such designation could prevail over the other calls in the mortgage. No instruction on that subject was given, but the court did charge the jury as to the effect of a description by quantity, telling them that they might consider the terms of the mortgage and all documents referred to in it, the condition of the property and circumstances surrounding the transaction, and if they found that, at the time the mortgage was signed, the plaintiff did not own 400 cuerdas, and afterwards acquired sufficient to make up what Mrs. Diaz believed and had reason to believe was included in the mortgage, then the law will hold that such land is included and they must find for the defendants so as to make up the full quantity of land. Conversely, they were instructed that "if when Sanchez made the mortgage he was in possession of a tract bought from Monserrate Garcia that contained 400 cuerdas, then they must find, under the language of the descriptive clause of the mortgage, that he did not convey to her any of the tracts he now sues for."

This makes the construction of the mortgage depend— not upon its language, but upon the quantity of land the mortgagor owned at the date of its execution, and required the jury to make designation by cuerdas prevail over description by specific boundaries. This is contrary to the rule that calls for quantity must yield to the more certain and locative lines of the adjoining owners. Such lines are certain, or they can be made certain, and may be platted so as to show the exact course and distance. They are treated as a sort of natural monument, and must prevail over the more general and less distinct designation by quantity. *Bartlett Land Co.* v. *Saunders,* 103 U. S. 316; *Whiting* v. *Dewey,* 15 Pick. 428, 434; *Cox* v. *McGowan,* 116

No. Car. 131, 135; *Reed* v. *Proprietors,* 8 How. 274, 289; *Leonard* v. *Forbing,* 109 Louisiana, 220.

2. It was argued that this rule was not applicable to Porto Rican deeds, made at a time when loose and indefinite methods of describing land were used. *Doolan* v. *Carr,* 125 U. S. 618, 632. But we find nothing in this case to warrant a departure from a rule long established and necessary to the protection of titles. The mortgage adopted a common method of bounding land. If there had been any error in describing what had been conveyed it became manifest when Mrs. Diaz took possession in 1891. If there was a mutual mistake, proceedings could have been brought to reform the mortgage and on such trial most of the evidence upon which plaintiff now relies might have been relevant. But in this action of ejectment he must recover on the strength of his own title and cannot prevail against those who hold under an instrument signed by him and which, in unambiguous terms, conveyed—not two separate tracts but a single body of land with definitely described continuous exterior boundaries. To permit a grantor, on the claim that an ambiguity existed, to prove by parol that a lot in the center of such a tract had not been conveyed would make every grantee liable to have what had been conveyed in writing taken away by word of mouth.

3. The rule prohibiting written contracts from being varied by parol is not confined to the common law, but was of force in Porto Rico when this mortgage was made, and its enforcement in construing the descriptive clause according to accepted rules governing boundaries preserves the rights of the parties here. Sanchez was in possession of Sauri, as lessee, when the mortgage was made. That possession was itself a *prima facie* indication of title. He conveyed 400 cuerdas bounded by the adjoining land lines. There is a claim, not established proof, that these lines had been changed. The slight excess of fifteen

cuerdas, shown by a later and accurate survey, is not inconsistent with defendants' right to 400 cuerdas, but confirmatory of their contention (Civil Code, Porto Rico 1471), while if plaintiff recovers the defendants will be left in possession of only 279 cuerdas, when the mortgage conveyed their ancestor 400.

4. Following the descriptive clause in the mortgage was a statement that Sanchez was the owner of the land. In addition to this recital, which, according to *Van Renssellaer* v. *Kearney,* 11 How. 297, 322–326, would be equivalent to a covenant of warranty and ownership, it was claimed that, under the laws of Porto Rico (Civil Code, 1474) a warranty was implied in all conveyances of real estate. Apparently, in accordance with this view, the judicial deed, made in pursuance of the foreclosure sale, contained a provision that "the debtor, Jose Avalo Sanchez, remains bound under the present sale to guarantee the title in accordance with law." These facts estopped Sanchez from denying that he had the right to dispose of all the property which the mortgage purported to convey. For, having received the money on the faith of the statement that he was the owner of the property, he was bound to repay that sum; or, failing that, to perfect the title on which the money had been advanced. So that when he acquired what is now called Sauri, but which had been originally included in the land conveyed by the mortgage, the title enured to the benefit of his vendee. *Amonett* v. *Amis,* 16 La. Ann. 225; *Lee* v. *Ferguson,* 5 La. Ann. 533; *Stokes* v. *Shackelford,* 12 La. Ann. 172; *New Orleans* v. *Riddle,* 113 Louisiana, 1051; *Partida* v. *Tv.,* L. 51; Ib. T. XIII, L. 50; *Van Renssellaer* v. *Kearney,* 11 How. 297, 322–326; *Bush* v. *Cooper's Admr.,* 18 How. 82, 85; *Moore* v. *Crawford,* 130 U. S. 122.

*The judgment is reversed and the case remanded for further proceedings in conformity with this opinion.*