MONROIG, PLAINTIFF AND APPELLANT, v. CÓRDOVA ET AL., DEFENDANTS AND APPELLEES.

Appeal from the District Court of San Juan, Section 1, in an Action of Intervention in Ownership of Real Property.

No. 1358.—Decided May 2, 1916.

CONVEYANCE—DESCRIPTION OF PROPERTY—ADJOINING OWNERS.—The general rule in determining what is included in a conveyance is that general calls for quantity must yield to the more certain and locative lines of the adjoining owners which are, or can be made, certain.

ID.—ID.—EXTERIOR BOUNDARIES.—In distinguishing this case from that of *Veve* v. *Sánchez*, 226 U. S. 235, it was held that there was a difference between them. In the latter, the 134 *cuerdas* claimed by Sánchez were within the exterior boundaries of the mortgaged property, while in this case it cannot be held that the property of 7 *cuerdas* of land claimed, which is bounded on the west by the 24 *cuerdas* of mortgaged land, is included within the property mortgaged, for the reason that as it is bounded on one side by property belonging to the same owner it cannot be that the said property of 7 *cuerdas* of land is situated within the exterior limits of the property of 24 *cuerdas*.

ID.—ID.—MORTGAGE—VARIANCE—ORAL EVIDENCE.—When in construing a mortgage it appears that a property of a certain number of *cuerdas* was found to contain that number and one boundary with the property of a certain person was determined according to the survey set out in the title-deed, no natural or artificial boundary mark being specified, a method by which all the rights of the purchaser at the judicial sale of the mortgaged property as well as those of the said adjoining owner were determined, it cannot be held that the terms of a written document were varied by oral evidence.

The facts are stated in the opinion.

*Mr. Frank Antonsanti* for the appellant.

*Mr. Antonio Trujillo Guil* for the appellees.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an action of intervention in ownership of real property. Josefa O., widow of Monroig, filed a complaint in the District Court of San Juan alleging, in synopsis, that in a certain action of debt brought by Ramón Córdova against Ramón Solla plaintiff Córdova had attached, as property of

defendant Solla, a certain rural property of seven *cuerdas* of land belonging to the intervenor, the widow of Monroig, she having acquired the same by virtue of the foreclosure of two mortgages on two properties belonging to the said Solla, of which the property attached by the said Córdova was a part.

Ramón Córdova, one of the defendants in the action of intervention, answered the complaint, alleging in substance that the property attached by him was distinct from that foreclosed on by the plaintiff. The issue having been thus joined and the evidence examined, the court gave judgment against the plaintiff, who thereupon took the present appeal.

The plaintiff's evidence consisted of the judicial deed of sale executed in her favor by the marshal of the District Court of San Juan; of the testimony of witnesses Dionisio Bausó, Antonio Monroig, Plácido Ripoll and Frank Antonsanti, and of a plan.

It is shown by the deed that Ramón Solla was the owner by inheritance of two rural properties, which are described as follows:

"*First.* A piece of hill land containing 24 *cuerdas,* equivalent to 9 hectares, 43 ares and 29.36 centares, situated in the ward of Hato Tejas of the Municipal District of Bayamón; bounded on the north by the property of Antonio Monroig, now his succession; on the south by land of Eulogio Rivera, now his succession; on the east by lands of Ramón A. Solla and Antonio Monroig, now his succession; and on the west by property of Eulogio Rivera, now belonging to the Succession of Antonio Monroig.

"*Second.* A piece of land containing 9 *cuerdas,* equivalent to 3 hectares, 35 ares and 73 centares, situated in the ward of Hato Tejas of the Municipal District of Bayamón; bounded on the north and east by properties of Antonio Monroig, now his succession; on the south by land of Eulogio Rivera, now his succession; and on the west by land of the Succession of Solla."

It is also set out in the deed that Solla mortgaged the said properties to Pedro Fernandez Umpierre; that the latter sold the mortgages to the plaintiff-appellant and as Solla

failed to pay the debt so secured when due, the plaintiff-appellant foreclosed the mortgages and the mortgaged properties having been advertised for sale at public auction, the said plaintiff-appellant bid in the same at a certain price, which was credited to her claim.

Witness Bausó testified that he was a surveyor and an employee of the Central Juanita belonging to the Succession of Monroig; that he received instructions from his employer to survey some properties belonging to Ramón Solla and did so. His testimony fills five typewritten pages and tends to show that Solla pointed out to him the boundaries and always spoke to him of only two properties. The survey showed that the property of nine *cuerdas* of land contained that amount, but that the property of twenty-four *cuerdas* really contained thirty-one.

While the witness was testifying the plan prepared by him was introduced in evidence, which shows a parcel of land composed of forty *cuerdas* divided into two pieces, one of nine and the other of thirty-one *cuerdas*. There is a house thereon.

Witness Monroig testified fully and in detail with regard to a certain negotiation which he had with Solla for the purchase of the lands of the latter adjoining the lands of the Central Juanita; that he ordered a survey of the said lands; that he always understood that there were two properties; that he knew that the properties were mortgaged and that he had taken that fact into account in the negotiation, the purchaser agreeing to assume the lien and also to pay to the vendor a certain sum of money. It was found impossible to reach an agreement as to the amount to be paid in cash and the deal fell through. The witness insisted that Solla always referred to two properties and never told him that he had a third property at that place.

Witness Ripoll was another employee of the Central Juanita and accompanied surveyor Bausó when he made the survey. He corroborated Bausó's testimony in all its parts.

Witness Antonsanti, a lawyer, spoke at length regarding the contract of bargain and sale which was on the point of being entered into between the Central Juanita and Solla. All his testimony tends to show that in all his conversations with the witness, Solla said that he had only two properties at that place, one of twenty-four and the other of nine *cuerdas*.

The evidence of defendant Córdova consisted of the testimony of witnesses Ramón Solla, Pedro Fernández and Nicanor Cepero.

In his testimony Solla admitted that he attempted to sell all his realty to the Central Juanita; that a survey was made and that, in fact, he did point out the general boundaries because all the property was to be sold, but he denied that he said that he had only two properties. He claimed that in addition to the two mortgaged properties, which he inherited from his parents, he had another small property on which the house is situated, which he inherited from a relative, this being the property attached by Córdova. The description of the said property of seven *cuerdas* is as follows:

"A piece of hill land containing a one-story frame house with zinc roofing, bounded as follows: On the north by lands of Solla and the Succession of Solla; on the south by the land of Eulogio Rivera; on the east by the land of Eulogio Rivera; on the west by land of Ramón Solla. The area of the property described is seven *cuerdas*."

Solla explains further that not having arrived at an agreement with the Central Juanita on account of the latter's refusal to give him the amount in cash which he demanded, the central purchased and foreclosed the mortgages on the property, but he insisted throughout that only two of his properties were mortgaged.

The testimony of witness Fernández, the original owner of the mortgages, referred to the fact that he knew of the negotiations between Solla and the Central Juanita, but did not know the details. "That Solla told him that he had that deal in project and by reason thereof Messrs. Monroig negotiated with the witness."

Finally, Nicanor Cepero testified that he knew of the existence of the three properties because he had worked on them for many years. He described the property of seven *cuerdas* and said that he knew that Josefa Ortiz had resided thereon. According to the testimony of Solla, Josefa Ortiz was the name of the relative from whom he inherited the property in question.

Such, briefly, is the evidence introduced. The trial judge analyzed the same carefully and expressed himself in his opinion as follows:

"On the evidence introduced, the court is unable to conclude that the land claimed in this action is included in the property of twenty-four *cuerdas*, according to its boundaries, because as the mortgaged property is bounded on the east by property of Ramón Solla, we have no other basis than the survey of the twenty-four *cuerdas* for determining the area of the property mortgaged to Fernández Umpierre. In the absence of a boundary line separating the properties in a clear and distinct manner, we must presume that the property in dispute ends where that of the twenty-four *cuerdas* ends. The fact that the properties of nine and twenty-four *cuerdas*, with their respective boundaries, have been the subject of a single mortgage does not signify that all the land comprised within these two properties is necessarily included within the perimeter of the mortgaged property. Each property has its own boundaries and it has not been shown that in mortgaging these twenty-four *cuerdas* Ramón Solla gave mortgagee Fernández Umpierre to understand that all the land sued for by the plaintiff was included within the boundaries of this property. Solla mortgaged twenty-four *cuerdas* of land bounded on the east by his own property, and in our opinion the plaintiff is only entitled to the land specified in the deed, because it has not been shown by competent and satisfactory evidence that there was a greater area of land within the boundaries of the mortgaged property than what was specified in the mortgage contract."

In his brief the appellant maintains:

1. That the defendants are estopped from denying that the parcel of seven *cuerdas* in dispute is included within the mortgaged property which was conveyed by the marshal of the district court to the plaintiff.

2. That the judgment appealed from is contrary to the decision of the Supreme Court of the United States in the case of *Veve* v. *Sánchez,* 226 U. S. 234.

3. That under the judgment appealed from the terms of a written document are varied by parol evidence.

4. That defendant Solla offered no evidence to establish his right to the seven *cuerdas* in dispute.

5. That the evidence is contrary to the pleadings.

6. That the judgment is contrary to the evidence.

1. Let us examine the first error. As may be seen from the summary of the evidence, the plaintiff attempted to show by her witnesses that Solla always referred to two properties and never spoke of the third property attached by defendant Córdova. The attorney for the appellant deduced from this that Solla is estopped from now alleging the existence of a third property. In his testimony Solla admitted that when he undertook to sell his lands directly to the Central Juanita it was always on the basis that he was going to dispose of all the land he owned at that place. For that reason when the person employed by the central to survey the properties presented himself there he gave him the general boundaries; but Solla denied that he acknowledged that he had mortgaged all of his properties and insisted that only the two of them which he inherited from his parents were mortgaged to Fernández. The plaintiff did not become the owner by virtue of the contract of bargain and sale as first planned. The plaintiff purchased the mortgages and foreclosed them and acquired the mortgaged property at public auction. In weighing the evidence the trial judge gave credence to Solla's explanation, and if it is true we do not see how the alleged estoppel can be maintained as to Solla. Therefore, the question is reduced to the weight given to the evidence, and as in our opinion it has not been shown that the district court acted erroneously, its finding must prevail.

2. We will now study the second error assigned. In the

case of *Veve* v. *Sánchez, supra,* it appeared that José Avalo Sánchez mortgaged to María Díaz y Siaca a sugar plantation of 400 *cuerdas* known as "Bello Sitio." The mortgagee foreclosed the mortgage and finally the property was conveyed to her. Later Sánchez filed suit to recover a certain parcel of land of 134 *cuerdas* which he claimed was within the boundaries of the property "Bello Sitio" and had never been mortgaged. A survey was made of the property sold and conveyed to the mortgagee and it was found to contain 415 *cuerdas,* or an excess of less than 5 per cent over what the deed called for. If the claim of Sánchez had been sustained, the property of 400 *cuerdas* would have been reduced to only 279. Moreover, as stated, the property claimed by Sánchez was within the boundaries of the plantation "Bello Sitio." In reversing the judgment appealed from the Supreme Court held that Sánchez had no rights. In a syllabus of the opinion the following jurisprudence is laid down:

"The general rule in determining what is included in a conveyance is that general calls for quantity must yield to the more certain and locative lines of the adjoining owners which are, or can be made, certain."

In his opinion the trial judge held that the decision of the Supreme Court in the case of *Veve* v. *Sánchez, supra,* was not applicable to the present case. In fact, there is a distinction between the two cases. As we have seen, if the claim of Sánchez had been upheld his creditor would have received only 279 *cuerdas* of land although 400 *cuerdas* were mortgaged to her. By deciding the case in favor of the, creditor there resulted only a surplusage of fifteen *cuerdas,* or as we have said, less than 5 per cent of the whole. On the other hand, if this case were decided in favor of the plaintiff, instead of a mortgaged property of twenty-four *cuerdas* she would receive a property of thirty-one *cuerdas,* or an excess of more than 25 per cent.

But disregarding the area and adhering to the rule which should prevail according to the Supreme Court of the United

States, that is, the more certain lines of the adjoining land-owners, we find that in the case of *Veve* v. *Sánchez* the 134 *cuerdas* claimed by Sánchez were within the exterior boundaries of the mortgaged "Bello Sitio" plantation, while in this case, as found by the judge of the district court in his opinion (page 49 of the transcript), "It cannot be held that the property of seven *cuerdas* of land claimed, which is bounded on the west by the twenty-four *cuerdas* of mortgaged land, is included within the larger property for the simple reason that as it is bounded on one side by property belonging to the same owner, it cannot be that the property of seven *cuer-das* of land is situated within the exterior limits of the property of twenty-four *cuerdas*."

3. Let us examine the third error. In our opinion the trial court did not allow the terms of a written document to be varied by oral evidence. The written instrument was construed according to its text. A mortgaged property containing twenty-four *cuerdas* was found to contain that number, and one boundary with the property of a certain person, Solla, was determined according to the survey set out in the title deed, no natural or artificial boundary mark being specified, a method by which all the rights of the purchaser at the judicial sale of the mortgaged property as well as those of the said adjoining owner could be determined.

One fact that should be observed is that generally in giving the measurement of property the number of *cuerdas* is followed by the words "more or less" and in such a case the description is free from indefiniteness.

It should be observed also that there is a house upon the forty *cuerdas* which belonged to Solla, according to the plan prepared by the plaintiff's surveyor, and in the description of the mortgaged properties this fact is not stated, as is customary. On the other hand, the house does appear on the lot of seven *cuerdas* attached by Córdova.

4. In our opinion the fourth error assigned is also without merit. According to his testimony, Solla inherited the

mortgaged properties from his parents. Said properties were recorded in the registry of property. He inherited the property of seven *cuerdas* from a relative. It may seem that perhaps there was something unusual in this acquisition. The relative lived with Solla, who paid the expenses of her illness and burial and afterwards kept the property. Perhaps Solla is not the only heir. It may be that on account of this fact Solla did not clear up his title and have it recorded in the registry. However this may be, the fact remains that Solla remained in possession of the property in question as owner, and if he never mortgaged the same it could not have been acquired by the plaintiff who, therefore, has no right to attack the more or less legal title which Solla may have thereto.

5 and 6. In view of the foregoing, the conclusion is easily reached that in our opinion errors 5 and 6, assigned by the appellant, do not exist. After examining the pleadings and the evidence as a whole, we do not believe that it can be maintained that the evidence, as weighed by the district court, is contrary to the pleadings or that the judgment is contrary to the evidence.

The judgment appealed from should be

*Affirmed.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.