388

ADELA GAZTAMBIDE WIDOW OF ARRILLAGA ET AL., Plaintiffs and Appellants, *v.* HEIRS OF JUAN ORTIZ PERICCHI ET AL., Defendants and Appellees.

No. 9541.   Argued February 4, 1949.—Decided July 29, 1949.

390

*Francisco A. Arrillaga, pro se* and *Antonio Riera, A. Rivas Rosario, Raúl Trujillo Santiago, Alberto Ferrer, Ramón Gandía Biscombe,* and *Alberto Picó Santíago* for appellants.

*Pedro E. Anglade* for other appellants. *Fernando B. Fornaris* and *Pablo Juan Toro* for Heirs of Pericchi, appellees; *José A. Poventud* and *Enrique Báez García* for appellee Tió Nazario; *Amador Ramírez Silva* for appellee Flores Rodríguez.

MR. CHIEF JUSTICE DE JESÚS delivered the opinion of the Court.

This case deals with the review of a summary judgment. The amended complaint may be summarized as follows: The plaintiffs are the sole heirs of Rafael Arrillaga Urrutia, who died on September 15, 1933, while married to co-plaintiff Adela Gaztambide. The defendants, with the exception of Herminio Flores Rodríguez and Aurelio Tió Nazario, are the sole and universal heirs of Juan Ortiz Pericchi. Rafael Arrillaga Urrutia owned separately a certain farm known as *Hacienda* Monserrate, composed of 142.96 cuerdas which is described in the complaint, and the conjugal partnership created by his marriage to Adela Gaztambide was the owner of four rural properties of 15, 7, 52.24 and 10.45 cuerdas, respectively, adjacent to each other and to the 142.96 cuerdas farm.

By deed No. 26 of February 17, 1929, executed in San Germán before notary Miguel A. García Méndez and recorded in the Registry of Property of Mayagüez, the Arrillaga-Gaztambide spouses joined the five estates, that is, the one separately owned and the four belonging to the conjugal partnership, making up one sole property of 227.65 acres as described in the complaint. By the same deed they mortgaged it in favor of Juan Ortiz Pericchi to secure a loan for $7,000, and the stipulated interest at the rate of ten per cent per annum for which an additional credit of $2,800 was also provided as well as two more credits of $500 and $200 to secure interest in case of default and for costs, expenses and attorney's fees, respectively. Pursuant to the terms of the deed, the mortgage should become due on February 17, 1933.

The mortgagees defaulted in the payment of two interest instalments [1] and on August 12, 1932 Juan Ortiz Pericchi brought the summary proceeding established by the Mortgage Law and its Regulations, alleging in the petition, inter alia, the following facts:

"That in the FOURTH clause of the deed referred to, it was stipulated that if on maturity any of the interest or principal instalments were not paid, it would accrue default interest at the rate of ten per cent per annum, said interest to be paid annually, but that this concession should not be taken as a pretext for an extension of time."

When the writ demanding payment was entered on August 12, 1932, the secretary issued the corresponding order to the marshal to serve Rafael Arrillaga Urrutia and his wife Adela Gaztambide with process in the foreclosure proceeding in the following terms: instalment due February 17, 1931, and not paid: $700; default interest at ten per cent per annum on said interest instalment due and not paid computed from February 17, 1931 until February 17, 1932; $70.00; interest due on February 17, 1932 and not paid: $700.00; total principal $7,000, which together with interest amounts to $8,470. Default interest at 10% per annum on $8,470 computed from February 17, 1932 until payment: $385.85. Total: $8,855.85, plus interest at ten per cent per annum on $8,855.85 until full payment of the credit, plus costs, expenses and attorney's fees. In compliance with said order, on August 12, 1932, submarshal Luis Soler went to the residence of the Arrillagas and delivered to Adela Gaztambide a copy of the petition and of the order leaving a copy for her husband who was absent at that time.

---

[1] It appears from the record, although not from the complaint, that in the mortgage deed it was expressly agreed that "when any of the interest instalments becomes due and the same is not paid, the whole mortgage shall be understood to have become due and the creditor may proceed judicially to collect the full amount of the obligation just as if the mortgage had matured."

It is also alleged in the complaint that the summary foreclosure proceeding is null for the following additional reasons:

(*a*) Because since the properties sought to be joined belonged to two different entities, the consolidation is void under the law and the property resulting therefrom lacks legal existence;

(*b*) Because since the joined property has no legal existence, it could not be mortgaged, and if the transaction is considered as a mortgage on the different real properties sought to be joined, the mortgage deed was not recordable, inasmuch as the mortgage liability was not distributed among the various farms, and at most the debt acknowledged by Rafael Arrillaga and his wife is a common debt for whose collection the mortgage foreclosure proceeding does not lie;

(*c*) Because assuming that it were decided that the mortgage foreclosure proceeding was proper, said proceeding as well as the writ, the order and the service of process were entered without jurisdiction because the mortgage security for default interest only amounts to $500 and the demand payment required an amount in excess of said $500 for interest, as we halve already indicated;

(*d*) Because it does not appear that the edicts were published in the town of Añasco where the real properties are located;

(*e*) Because it was agreed in the mortgage deed that if on the maturity date of any of the interest or principal instalments [1a] the latter were not paid, it would accrue interest at the rate of ten per cent per annum, said interest to be paid annually and the petition shows:

6. "The appearing party Don Juan Ortíz Pericchi states that on the aforesaid mortgage credit the only interest instalment that has been paid to him is that which became due on February

---

[1a] The principal was not payable by instalments. According to the Registrar's certificate the loan was to be paid five years after executing the deed.

17, 1930 and that neither the defendants nor any other person has paid to him the interest instalments which became due on February 17, 1931 and on February 17, 1932. Hence, since the mortgage is due in its entirety and subject to foreclosure, the liquidation of the debt on August 1, 1932, is the following:" (The liquidation follows showing a total of $8,855.85.)

(*f*) Because it appears from said liquidation that since the interest instalment which became due on February 17, 1932 was paid, the defendants could not liquidate the interest on August 1, 1932 to the effect of charging interest on said interest, since on August 1, 1932 no annual instalment had become due from February 17, 1932, and therefore, the collection of said interest and the order of payment issued to cover said default interest from February 17, 1932, was entered without the court having jurisdiction therefor;

(*g*) Because the petition contains no allegation whatsoever to the effect that the interest and principal instalments had to be paid in any specific place, for which reason said payments had to be made in the place of domicil of the debtor and said petition does not show that the creditor either in person or through his agent, appeared in the residence of the debtor to receive payment of said interest instalments on maturity, or that he requested in the residence of the debtor the payment of the corresponding interest;

(*h*) Because notwithstanding the fact that Juan Ortiz Pericchi was aware of the falsity averred in the petition in claiming interest which had not been agreed upon and which was not secured by mortgage, and that the alleged consolidation of the pieces of property lacked validity and efficacy, he allowed the foreclosure proceedings to continue until November 3, 1932 when by virtue of the aforesaid proceedings the pieces of property sought to be joined were sold to Juan Ortiz Pericchi who appeared as only bidder in the auction sale; that he enjoyed possession thereof until on August 25, 1933, when, by deed before notary José Martín Betancourt, he sold it to codefendants Aurelio Tió Nazario and Hermi-

nio Flores Rodríguez, share and share alike, and that subsequently, that is, on September 20, 1940, Herminio Flores Rodríguez and his wife sold their interest to Aurelio Tió Nazario, by deed No. 5 before notary Miguel A. García Méndez, who has been heretofore in the possession of said real property.

It is further alleged that the entry made in the registry of property in connection with the proposed consolidation of the real properties reveal the facts stated therein for which reason Herminio Flores Rodríguez and Aurelio Tió Nazario were aware of those facts, and that from the registry itself it appeared that Juan Ortiz Pericchi's title flowed from a judicial sale in the aforesaid mortgage proceeding said title being subject to attack in the proper plenary action. Finally, the plaintiffs contend that the properties referred to have been devoted by the defendants and their predecessor to the cultivation of sugar cane and other farm products, and that the market value of said fruits, received or that should have been received, from November 3, 1932 when the plaintiffs were deprived of the possession of their real properties, including compensation payments under the Agriculture Adjustment Act and the Costigan-Jones Bill, after deducting cultivation and production expenses, amounted to $300,000. The complaint closes with a prayer for judgment consistent with said allegations.

Against this complaint the defendants, on October 22, 1945, filed motions to dismiss, to strike out portions thereof and for a bill of particulars. While these motions were pending, the defendants, on October 18, 1946 without prejudice thereto, moved for a summary judgment. In this petition they combined the motion to dismiss which they had previously filed.[2] In the motion for summary judgment the de-

---

[2] The motion for summary judgment authorized by Rule 56(b) of the Rules of Civil Procedure, may be joined with the motion to dismiss. *Palmer* v. *Palmer*, 31 F. Supp. 871 (D. Conn., per Clark, C. J.), *Commentary, Motion For Summary Judgment Before Answer*, 4 Fed. Rules Serv. 56a.3.

fendants prayed that the complaint be dismissed with costs and attorney's fees on plaintiffs: (1) because the facts alleged in the complaint do not entitle petitioner to any remedy whatsoever; (2) because in addition the fact that the alleged causes of action for nullity of consolidation, of the mortgage contracts and of the judicial sale were barred, the last two alleged actions did not arise within four years, nor the first one within the fifteen years preceding the filing of the complaint; (3) because codefendants Aurelio Tió Nazario and Herminio Flores Rodríguez, as purchasers from a person who had his title recorded without any defect whatsoever, are third parties; (4) because the title to the real property sought to be revendicated is barred in favor of codefendant Aurelio Tió Nazario, because he has been in possession thereof uninterruptedly as owner, with just title recorded in good faith, for more than ten years; (5) because of the other grounds appearing from the record, especially from the amended complaint itself, from the joined motions to dismiss and from the certificate of Registrar of Property of Mayagüez, of February 1, 1946.

In support of their motion for a summary judgment, the defendants filed no affidavits or depositions, but the following appears from the certificate of the Registrar: (a) the recordation of the joined property and the execution of the mortgage in favor of Juan Ortiz Pericchi; (b) the fourth entry of the same property wherein the latter was recorded in favor of Juan Ortiz Pericchi by virtue of the auction sale in the summary proceeding; (c) the sixth entry wherein the same property was recorded in favor of Herminio Flores Rodríguez and Aurelio Tió Nazario by purchase from Juan Ortiz Pericchi, and the mortgage executed by Tió Nazario on the same property, in favor of the vendor as security for the selling price, the mortgage being subsequently cancelled; and the ninth entry regarding the purchase, made by Aurelio Tió Nazario of the condominium of Herminio Flores Rodríguez.

▮▮ To conclude that the complaint contains facts sufficient to constitute a cause of action it shall only be necessary to consider that, according to its allegations, the property of 142.96 acres known as Estate Monserrate, was separately owned by Rafael Arrillaga Urrutia and that since the remaining four properties belonged to the conjugal partnership between Arrillaga and his wife Adela Gaztambide, said properties could not be joined, according to § 61 of the Regulations for the Execution of the Mortgage Law.[3]  Construing this article, Professor Luis Muñoz Morales in his work *Lecciones de Derecho Hipotecario*, p. 142, says:

". . . The owner of various farms which are recorded under different numbers, may also join them in a single body which will add up to the whole area to be recorded as a new property under a different number; and this is what is called consolidation of properties, although it should be noted that the joined parcels must belong to the same owner.  Also, part of a recorded property may be segregated to be joined to another likewise recorded."

And in *Vargas* v. *Registrar*, 38 P.R.R. 214, this Court, speaking through Mr. Justice Texidor, said:

"This court has upheld in its entirety the rule stated in the said Art. 61.  In *Muñoz* v. *Registrar*, 25 P.R.R. 786, and *Vilá* v. *Registrar*, 27 P.R.R. 848, cited by the registrar in his decision and which are strictly applicable to the present case, the court maintained the doctrine of the legal impossibility of consolidating separate property with community property." (p. 216)

---

[3] Article 61 of the Regulations for the Execution of the Mortgage Law, in its pertinent part provides:

"Article 61.—The following shall be recorded under a single number if the persons interested should so request, being considered a single estate, in accordance with article 8 of the law and for the purposes therein stated:

". . . . . . . . . .

"Fourth.  Adjoining tracts of land belonging *to the same person*, or to a number of persons *pro indiviso*, even though they contain no place of shelter whatsoever and their origin is not identical, and even though they shall have come into the possession of the last holder from different sources." (Italics ours.)

It is true that in *Vilá* v. *Registrar of San Juan*, 27 P.R.R. 848, husband and wife consolidated properties belonging, some of them, separately to one of the spouses, and others to the conjugal partnership, and by the same deed they sold the consolidated properties. The purchaser presented the deed in the registry and when we reversed the ruling denying its inscription because the consolidation could not be made according to law, we said that since the properties had been sold in the same act and the purchaser had become its owner, when he presented his title in the registry, he was the sole owner contemplated by § 61 of the Regulations, who as such, could pray that instead of recording them separately, they be recorded consolidated. Subsequently, in *Suria* v. *Registrar*, 55 P.R.R. 524, dealing with the consolidation of conjugal property and separate property with a mortgage on the consolidated property we had the opportunity of distinguishing the case of *Vilá* v. *Registrar of San Juan*, *supra*, as follows:

"In the cases cited by appellant the spouses grouped properties of the conjugal partnership with private properties of one of them and after grouping them, sold the resulting property. In such a case, as the purchaser acquired title to the properties of the conjugal partnership as well as to the private properties of one of the spouses, the grouping is recordable, since in any case the purchaser when he acquired the properties had a perfect right to group them. As the vendors grouped them with the consent of the purchaser, for if he had not consented he would not have accepted the sale and signed the deed, it is equivalent to a grouping by the purchaser himself. *Qui facit per alium facit per se*. The present case is different. This is not the case of a purchaser but of a mortgage creditor, who acquires a real right on the mortgaged property, but not title to the same. As the petitioner does not have title to the mortgaged properties, he is not their owner, and not being the owner, he lacks the most important requirement to be able to carry out a grouping, which is that he must be the owner of the grouped properties. Section 61 of the Regulations for the Execution of the Mortgage Law. Neither the mortgage cred-

itor nor the lessee have any right to group properties which do not belong to them. For this reason it cannot be said that the grouping is made by the mortgage creditor as the petitioner erroneously sustains. If the grouping cannot be recorded, neither can the mortgage on the grouped property be recorded, since a mortgage cannot be constituted on a property which does not even have legal existence, as in the case." (pp. 525, 526.)

██ Under such circumstances, the alleged mortgage contract was not recordable. Therefore, the mortgage was nonexistent, pursuant to §§ 1774 of the Civil Code and 146 of the Mortgage Law.[4] If the mortgage was nonexistent, it must be concluded that the summary foreclosure proceeding was entirely void.

It may seem strange that we ignore the allegations of the complaint to the effect that Rafael Arrillaga Urrutia was not personally served with process in the summary proceeding. This is due to the fact that in the registrar's certificate the process is copied and it appears from its return that said defendant, in the foreclosure proceeding, was personally served in his residence.

██ Nor do we discuss the other alleged ground for nullity consisting in having collected default interest from February 17, 1932 until August 1, 1932, because according to the registrar's certificate, it was stipulated in the mortgage deed that when an interest instalment becomes due, the entire obligation would become due. Therefore it cannot be alleged that said instalment was not due because its natural term had not expired.

---

[4] Section 1774 of the Civil Code, in its pertinent part, provides:

"Besides the requisites mentioned in section 1756, it is indispensable, in order that the mortgage may be validly constituted, that the instrument in which it is created be entered in the registry of property."

Section 146 of the Mortgage Law provides:

"In order that voluntary mortgages may be validly constituted it shall be necessary:

"1. That they have been agreed to or ordered constituted by a public instrument.

"2. That the deed shall have been recorded in the registry established by this law."

█ The defects hereinbefore noted in regard to the consolidation of the property and the execution of the mortgage, appeared from the registry, inasmuch as all the properties were recorded. An examination of the Registry in connection with each piece of property would have clearly shown the separate character of one and the conjugal character of the others. Accordingly, Ortiz Pericchi, as well as Aurelio Tió Nazario and Herminio Flores Rodríguez do not have the status of third parties pursuant to § 34 of the Mortgage Law, inasmuch as the nullity of the consolidation, as well as of the mortgage sought to be executed, clearly appeared from the registry. And as to the heirs of Ortíz Pericchi it is clear that, irrespective of the registry, they are liable for the obligation of their predecessor. Section 610 of the Civil Code.

██ It having been established that the amended complaint contains facts sufficient to constitute a cause of action against all the defendants, it remains to be decided now whether the lower court erred in entering the summary judgment dismissing the complaint.

Rule 56(b) of the Rules of Civil Procedure provides:

*"For Defending Party.*—A party against whom a claim counterclaim, or cross-claim is asserted ,or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof." (Italics ours.)

The purpose of Rule 56 is to accelerate proceedings in those suits wherein there is no genuine issue as to any material fact to be tried. In pursuit of that aim, the defendants, when filing their motion for summary judgment, attached thereto the registrar's certificate in order to destroy the essential allegation of the complaint as to the nullity of the consolidation and of the mortgage on the ground that all the properties did not belong to the same owner. But that certificate did not destroy the essential allegation of the complaint. This is so because the certificate refers exclusively to the recordation entries of the alleged consolidation and to

subsequent recordations of the property allegedly consoli-- dated, and it does not appear clearly from said certificate that all the properties belonged to the conjugal partnership as the defendants allege. The certificate, after referring to. the record number and area of each property, reads:

". . . recorded the former [Hacienda Monserrate] as to its possession and the other four as to its ownership in favor of Rafael Arrillaga Urrutia, of legal age, married to Adela Gaztambide, attorney and resident of Añasco, at folios. . .".

We concede that said record does not reveal that Estate Monserrate was of a separate character. But it was not in that entry where those who allege their status as third parties had to look for the separate or conjugal character of said property, but to the tenth entry appearing at folio 99 of volume 8 of Añasco, by which Arrillaga recorded possession thereof in his favor. It was by these means that the defendants could have proved that a genuine issue as to any material—at least as to that essential fact to be tried—did not exist. He who alleges the status of a third party mortgagee is bound to examine the entire record of the property in the registry and he cannot protect himself by alleging that a certain record entry does not clearly show the defect barring him from invoking such status.

In *Ramos* v. *People*, 67 P.R.R. 600, we decided that the party seeking a summary judgment must prove that there is no genuine issue as to any material fact to be tried. And it is the duty of the trial judge to decide if there is a disputed material fact. If it exists, it must be elucidated in the proper trial. *Associated Press* v. *United States*, 326 U. S. 1 (1945). There is no doubt that a disputed material fact exists here, which must be tried by the court. But the defendants contend that the plaintiff should have presented counteraffidavits to destroy the effect of the registrar's certificate. Likewise the plaintiffs allege that the defendants should have presented affidavits in support of their motion for summary judgment. The plaintiffs were not bound to

present counteraffidavits, because, as we have seen, the registrar's certificate did not destroy the essential averment of the complaint, and consequently, they could rely on it. Nor were the defendants bound to attach affidavits to the certificate, since Rule 56 provides that the summary judgment may be prayed for *with or without affidavits or depositions.*

The defendants contend that the action is barred. We have already seen that according to the allegations of the complaint, the consolidation as well as the mortgage are void. Prescription does not run against that which is nonexistent. The course of time cannot insufflate life to that which legally never had it. Consequently, a proceeding to collect a nonexistent mortgage cannot have legal existence and prescription does not run against it. *Costas v. G. Llinás & Co.,* 66 P.R.R. 688. It may seem, as defendants contend, that the annulment of the foreclosure proceeding rests on a mere technicality in grounding the nullity on the fact that the properties were unduly consolidated. But there is no such technicality. An attempt to consider the properties as being separately mortgaged, thus dispensing with the consolidation would confront us with the unsurmountable difficulty of not having any basis to fix that part of the mortgage credit for which each property should be liable. Under these circumstances, a foreclosure proceeding against various farms whose liability has not been fixed, would be void because if the mortgage had been originally constituted in such a way, the contract would not have been recordable. Article 119 of the Mortgage Law. *Ortiz v. Registrar,* 16 P.R.R. 643, and *J. M. Portela & Co. v. Registrar,* 41 P.R.R. 281. Since it was not, the foreclosure proceeding could not be interposed for collection.

Defendants also argue that the plaintiffs are estopped by the acts of their predecessor, from alleging the nullity of the foreclosure proceeding. They rest their contention on the fact that when they appeared in the consolidation and mortgage deed and when joining the pieces of prop-

erty, they led them to believe that all of them belonged to the conjugal partnership. This argument lacks merit, for all the properties were recorded in the registry of property, and since it is a public registry, within the reach of both the mortgagor and the mortgagee, they could have discovered for themselves the error in making said consolidation. But aside from this, according to the principles of the Mortgage Law, it is conclusively presumed that the mortgagee was aware of the entries in the Registry, and since the separate character of the Estate Monserrate and the conjugal character of the remaining four properties appeared therefrom, it cannot be successfully alleged that he or his successors were induced to error by the act of the mortgagors. By analogy, the following commentary of Manresa on § 1483 of the Spanish Civil Code, the same as our 1372, seems applicable:

"The Code says, that 'if the property sold were encumbered, without it being mentioned in the deed, with no lien or servitude apparent, of such a nature that it should be presumed that if the purchaser had been aware thereof, he would not have acquired it, he shall ask for the rescission of the contract, unless he prefers the corresponding compensation.' And construing said section, the writer adds: it is understood that the apparent servitudes do not produce the same effect, for their existence and exercise are revealed by signs which make them publicly known; but if the nonapparent encumbrance or servitude were recorded in the registry of property, the purchaser could have realized perfectly well the condition of the property sold; and if he suffers damages, he shall impute them not only to the vendor, but also to himself. Can he, nevertheless, ask for rescission of the contract, or for compensation?

"Said writer does not answer this question, he merely poses it; but it seems to us that in the example given, the purchaser shall not be entitled neither to rescission of the contract nor to ask for compensation of any sort. The reason on which we rest seems to us quite clear: Section 1537 reads: 'All that is prescribed in this title is to be understood as subject to the provisions of the Mortgage Law with respect to real property.' The title referred to in said article, is the one treating of pur-

chase and sale, wherein the article under consideration is involved; therefore it is evident that its provisions must be understood as subordinate to the provisions of the Mortgage Law. Now; one of the fundamental bases of this law is the principle set forth in § 24 thereof, which provides that the recorded titles shall produce its effect even against the creditor, singularly privileged by common legislation; then, if said liens or servitudes are recorded in the Registry, it is clear that they must produce its effect against the purchaser of the property subject to such encumbrances, and that effect can be no other, in the case given, than to deprive him of the actions granted him by § 1483 of the Code, which undoubtedly would be available to him if no inscription existed." Manresa, *Comentarios al Código Civil Español*, vol. 10 (2d ed. 1908) pp. 221, 222.

The defendants cite the case of *Veve* v. *Sánchez*, 226 U. S. 234 (1912). That case is easily distinguishable from the present one. In the former, the plaintiffs mortgaged in favor of defendant María Díaz a certain farm known as Bello Sitio, described as containing 400 cuerdas, giving its metes and bounds. The farm was foreclosed in 1889 before the Mortgage Law now in force became effective, and María Díaz bought it at the foreclosure sale and was put in possession thereof. It so happened that in the center of Bello Sitio there was a parcel of land called Saurí which had 134 cuerdas. This parcel of land called Saurí did not belong to José Avalo Sánchez when the mortgage was executed, but he had it under a lease, and acquired it by purchase three weeks later. Avalo Sánchez did not advise the mortgagee that said parcel of land which apparently was part of Bello Sitio was not his, and neither could she suspect that within the boundaries of Bello Sitio there existed a farm independent of the former. After the mortgage was executed and after possession of Bello Sitio, including Saurí, was delivered to María Díaz, José Avalo Sánchez brought a suit to revendicate the Saurí farm. Bello Sitio, including Saurí, was measured, giving an area of 415 cuerdas. Thus, if from the 415 cuerdas of all the land including Saurí, Bello Sitio,

which had been mortgaged as having 400 cuerdas, were substracted, it would only have 281. Under such circumstances, the Supreme Court of the United States held that Avalo Sánchez was estopped by his own acts from alleging that Saurí was not a part of Bello Sitio and as such included in the mortgage, for he induced María Díaz to believe, when mortgaging only an extension of land consisting of 400 cuerdas, that all the lands included within the boundaries of Bello Sitio belonged to him. And the fraud was made clearer when it was proved that once the Saurí area was substracted from the Bello Sitio farm, Avalo Sánchez was not mortgaging a piece of property of 400 cuerdas as he said in the deed.

In the case at bar the error committed by the plaintiffs could have easily been detected by Ortíz Pericchi if he had gone to the Registry as it was his duty to do.

The defendants cite § 175 of the Regulations for the Execution of the Mortgage Law in support of their plea of res judicata. They contend that the cause of action for nullity brought by the plaintiffs in this case could have been instituted by Rafael Arrillaga Urrutia and his wife within the proceeding referred to and having failed to do this, Adela Gaztambide who was a party defendant in the foreclosure proceeding and the other heirs of Rafael Arrillaga Urrutia, can not try now to litigate this matter which they could have litigated within the proper foreclosure proceeding. Assuming, without deciding, that in some cases the summary proceeding of the Mortgage Law might constitute res judicata to solve the problem it will be sufficient to examine § 175 of the Regulations for the Execution of the Mortgage Law prior to its amendment by Act No. 81 of May 13, 1936 (p. 433). Said Article, in its pertinent part, provides:

"The summary proceedings referred to in this section can not be suspended by incidental issues or any other issues raised by the debtor or the third person in possession, nor by any other person appearing as an interested party, except in the following cases:

"1. When documentary evidence is produced of criminal proceedings charging the forgery of the mortgage deed the subject of the proceedings, in which a complaint shall have been admitted or an order of prosecution has been issued.

"2. When an action in intervention of ownership is filed, necessarily the title of the ownership of the estate in question recorded in favor of the intervener under a date prior to the record of the claim of the execution creditor and not canceled in the registry being necessarily filed therewith.

"3. When a certificate from the registrar is presented to the effect that the mortgage under which the proceedings are being prosecuted has been canceled, or an authentic copy of the public instrument of the cancellation of the same, bearing a memorandum of its presentation in any of the registries where it is to be noted, executed by the plaintiff or by his predecessors or successors in interest, the transfer in a proper case being also proved by documentary evidence.

". . . . . . . . .

"All other claims that may be brought, either by the debtor or by third persons in possession and other persons interested, including those *involving the nullity of the title or of the proceedings,* or the maturity, truth, extinction or amount of the debt, shall be heard in the proper plenary action, without ever producing the effect of suspending or interfering with the execution proceedings." (Italics ours.)

If we examine the allegations of the complaint, we shall see that none of them is included within the three cases which, according to said § 175, permitted the mortgagor to intervene in the summary foreclosure proceeding. On the contrary, said allegations show that the action herein is controlled by the last paragraph of the above-cited § 175.

The defendants urge that they have acquired the farms in question because they had been in possession thereof for more than ten years, uninterruptedly in good faith, and with just title. We concede that the defendant Tió Nazario has been in uninterrupted possession of the property for more than ten years; we also concede that he acquired it with just title, for the deed of sale of the condominium which Ortíz Pericchi sold to him and the other deed by which he

bought the condominium of Flores Rodríguez, constitute just title, inasmuch as they are sufficient to transfer the property; but as we have already amply discussed, neither Tió Nazario nor any of his codefendants can allege that they have been in possession in good faith, since we have shown that all of them knew from the Registry the defects in their title. This being so, the good faith which is an indispensable requisite to acquire by the ten-year prescription, does not exist. *Costas* v. *G. Llinás & Co., supra.* Both litigants devote a great part of their briefs in discussing whether the anatocism convenant is legal when the transaction is of a civil nature as happens in this case. Since that ground for nullity was not alleged in the complaint, we shall not consider on appeal questions which where not raised in the lower court when the summary judgment was entered.

In view of the foregoing, we are of the opinion that the lower court erred in deciding that there was no genuine issue as to any material fact, and consequently, the judgment will be reversed and the case remanded for further proceedings consistent with this opinion.