We find no error in the judgment of the district court.

For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C. J., takes no part.

24 So.2d 275

**CITY OF NEW ORLEANS v. JOSEPH RATHBORNE LAND CO., Inc.**

No. 37609.

June 29, 1945.

Rehearing Denied Nov. 5, 1945.

Dart & Dart, of New Orleans, for defendant and appellant.

Francis P. Burns, L. L. Dubourg, and James W. Hopkins, all of New Orleans, for plaintiff-appellee.

HAWTHORNE, Justice.

Plaintiff, the City of New Orleans, on its own behalf and as trustee, instituted this suit praying to be recognized as the true and lawful owner of Lots 1, 2, 3, 4, and 6 and the East ½ of the Northwest ¼ of Section 32, Township 13 South, Range 18 East, Parish of St. John the Baptist. Defendant, Joseph Rathborne Land Company, Inc., answered the suit and prayed that the demands of plaintiff be rejected and that it be recognized as the true and lawful owner of the lands in question, and in the alternative pleaded prescriptions of 10 and 30 years acquirendi causa.

Under date of February 15, 1855, the State of Louisiana patented to S. Roman land described in said patent as follows: "Lot No. 3 of Sec. 32 Township 13 S. Range 18 E. 88.25 [acres] S. Eastern District", the State having acquired said land under the Swamp Land Act of Congress approved March 2, 1849, ·9 Stat. 352, and September 28, 1850, 43 U.S.C.A. § 982 et seq. By mesne conveyances this property was acquired by the Joseph Rathborne Land Company, Inc., defendant in this suit.

At the time this patent was issued, there was only one township plat of the township in question, namely, a plat examined and approved April 9, 1831, by A. F. Rightor, deputy surveyor, and re-examined and approved July 9, 1832, by Gideon Fritz, surveyor of public land, which plat is referred to in this litigation as the "Evans survey or plat". On this

plat Lot 3 is found to be the West Fractional ½ of Section 32, Township 13 South, Range 18 East, bounded on the west by the east or lower line of a Complete Spanish Grant (known as the "Sosthene Roman Grant"), on the south by the meander of Lac des Allemands, on the east by the north-and-south center section line of Section 32, and on the north by the north section line of Section 32; the western boundary of said lot being 50 chains, and the north boundary of Section 32 being 71 chains, according to this map or plat, shown below.

### T . XIII . R . XVIII . E

There is another government plat of this township, approved September 20, 1859, which recites and sets forth the various surveys previously shown on the Evans plat, and states also that Earl Cranston, deputy surveyor, surveyed in June, 1838, a claim of Sosthene Roman, and under the caption "Resurveys" shows other surveys made. This township plat, commonly referred to as the "Hauke survey or plat", shows that, instead of there being a body of water in the South ½ of Section 32, as indicated by the meander line of Lac des Allemands on the Evans plat, the whole of Section 32 consists of swamp lands. This township plat subdivided the entire Section 32 into various lots. In so subdividing, Lot 3 as shown on the Evans plat is not shown on the Hauke plat, but instead the West ½ of Section 32 (which on the Evans township plat, approved in 1832, was shown as Lot 3) is divided into Lots 1, 2, 3, 4, 5, and 6 and the East ½ of the Northwest Fractional ¼.

On November 12, 1894, the State of Louisiana conveyed to the LaFourche Basin Levee Board Lots 1, 2, 3, 4, and 6 and the East ½ of the Northwest Fractional ¼. By mesne conveyances from the levee board, plaintiff, the City of New Orleans, individually and as trustee, derives its title to these lots.

The patent to defendant's author in title having been issued by the State on February 15, 1855, according to the Evans township plat approved in 1832, and plaintiff's author in title having acquired its title also from the State on November 12, 1894, plaintiff admits defendant's title to Lot 3, the property conveyed by the patent, *whatever that lot may be under the Evans plat.*

There is no dispute between the parties as to the north and east boundaries of said lot (Lot 3 of the Evans plat), and defendant concedes that its ownership does not extend beyond the Evans meander of Lac des Allemands on the south, which boundary is accepted by plaintiff also. The main issue in the case is where should the west boundary of Lot 3 of the Evans plat, as patented to Roman, be placed, or, in other words, how should Lot 3 be surveyed on the ground from the description given in the patent, which is in turn governed by the Evans township plat approved in 1832.

As per stipulation in the record between the parties, it is admitted that the lower or east line of the Sosthene Roman Grant is as determined and located on the ground by survey made by two civil engineers, Messrs. Lovell and Landry, appointed by the respective parties, which survey was made on July 2, 1943, and in the record we find a map or plat of said survey, together with the proces verbal, signed by these engineers on October 1, 1943.

Plaintiff contends that such distances, courses, and acreage as are shown on the Evans plat should govern, and that the west boundary of Lot 3 should be fixed, according to these courses, distances, and acreage, at the lower or eastern line of the Sosthene Roman Grant as this line is shown on the Evans plat, and not at the actual lower or eastern boundary of that

grant on the ground, as determined by the survey of Lovell and Landry.

Defendant contends that, according to the Evans plat, Lot 3 should be bounded on the north by the north line of Section 32, on the east by the center section line of Section 32, on the south by the Evans meander of Lac des Allemands, and on the west by the lower or east line of the Complete Spanish Grant (Sosthene Roman Grant, Section 34) as such line has been definitely established to exist on the ground by the survey referred to in the stipulation or agreement of the parties hereto.

The lower court accepted plaintiff's contention and rendered judgment accordingly, decreeing plaintiff to be the owner of the property as prayed for, less and except a tract containing 105.92 acres, which was decreed to be the property conveyed by the patent to Roman, namely, Lot 3 on the Evans plat, and now owned by defendant, Joseph Rathborne Land Company, Inc.

From this judgment defendant has appealed.

The land in controversy is a strip approximately 10.71 chains wide within Section 32 north of the Evans meander of Lac des Allemands, being situated between the lower or eastern line of the Sosthene Roman Grant (Section 34) as fixed on the ground and the west line of Lot 3 as found by the lower court. Lot 3 as found by the trial judge and Section 34 were both patented to Sosthene Roman and are now owned by defendant. In other words, the strip in question, awarded to plaintiff by the lower court, is located between two pieces of property owned by defendant, Joseph Rathborne Land Company, Inc.

Counsel for these litigants call our attention to a number of errors in the Evans survey and plat, among these being that Evans did not survey the Sosthene Roman Grant, Section 34; that said survey incorrectly shows Lac des Allemands to the south of Section 32, and that the Sosthene Roman Grant was placed on the Evans township plat evidently by some one in the Land Office of the United States who had charge of making subdivisions of the sections which had been surveyed by Evans. For these reasons plaintiff contends that the lower or east line of the Sosthene Roman Grant, as shown on the Evans plat, "is nonexistent or imaginary, and is not correctly located".

The lower court in rendering its judgment evidently accepted the testimony of a civil engineer called by plaintiff in this case, who located Lot 3 on the ground according to such courses and distances as are shown on the Evans plat. The engineer took the figure of 71 chains, being the distance from the northeast corner of Section 32 to the east boundary of the Roman Grant as shown on the Evans plat, deducted therefrom 40 chains (although this figure is not shown or given on the plat), and ran the north boundary of Lot 3 a distance of 31 chains from the center section line. He next ran the north-and-south center section line as the east boundary of the lot. Then he ran the Evans meander of Lac des Allemands, which is the admitted south boundary of Lot 3, and thereafter, in order to connect the north

boundary at its western terminus with the western terminus on the meander, from the point 31 chains west of the north-and-south center section line of Section 32 he ran a line south 21° east to the Evans meander of Lac des Allemands, said line being run parallel to the lower or eastern line on the ground of the Sosthene Roman Grant, and being the west boundary of Lot 3. as found by the trial judge.

The Evans plat shows that the north boundary of Township 13 South, Range 18 East, was surveyed by William H. Cobb, deputy surveyor, in the winter of 1829, part of the west boundary by I. R. Sharkey, deputy surveyor, in the same year, and the balance by Thomas P. Evans, deputy surveyor, in the winter of 1830. The field notes of Evans, which are in the record, show conclusively that he did not survey the Sosthene Roman Grant, and it is thus evident that the location on the plat of this Complete Spanish Grant, identified as Section 34, was done in the Land Office of the United States.

Since the Sosthene Roman or Complete Spanish Grant, identified as Section 34, was not surveyed by Evans, it naturally follows that he could not and did not place on said map or plat the distance of 71 chains appearing thereon from the north-east corner of Section 32 to the Complete Spanish Grant, or that of 50 chains appearing thereon as the length of the western boundary of Lot 3, the lower or eastern line of the Roman Grant, as same appears on the plat within Section 32.

Counsel for plaintiff contend that we should disregard the west boundary line of Lot 3 as being the lower or eastern line of the Sosthene Roman Grant, Section 34, as same is located on the ground, for the reason that this grant was not surveyed by Evans but was placed on the map in the United States Land Office, but ask that we accept the courses and distances above pointed out, which were also placed on the map in the Land Office of the United States.

In the table of contents of the Evans plat we find the following: "Sosthene Z. Roman Sec. No. 34 Certificate No. ——— Area 466.57", and Section 34 has been identified as that tract on the Evans plat designated "Complete Spanish Grant".

In the case of Lavergne's Heirs v. Elkins' Heirs, 17 La. 220, this court, in discussing the acts of Congress with respect to the recognition and confirmation by the United States government of property, title to which was derived from the Spanish or French government, stated that the object of these laws was two-fold: (1) to ascertain the quantity of land granted and the description of the various tracts, in order to determine what land belonged to individuals and what to the government, and (2) to confirm to the grantees such titles as were imperfect and required further action on the part of the public authorities to complete them. In that case we said:

"A grant which was complete under the French or Spanish government required no confirmation to give it validity under ours. The government of Spain recognized the perfect titles derived from the French government which preceded it, and the

treaty which ceded Louisiana to the United States expressly guarantees to all the inhabitants equal rights and privileges with other citizens and protects and maintains them in the enjoyment of their property. Art. 3 of the treaty of cession. Vol. 1, Land Laws p. 43. (Delassus v. United States), 9 Pet. [117], 133, (9 L.Ed. 71). If there existed a doubt upon this point, the language used by the Secretary of the Treasury in his instructions to the Registers of the Land Office at New-Orleans and Opelousas, in the year 1805, would remove it. The two letters are nearly the same. He says:

" 'For the present, I will call your attention only to one part of the law.' (Meaning the act of Congress of March, 2, 1805.) 'It is enacted by the 4th Section, that persons claiming lands by virtue of legal French or Spanish grants, made before the 1st. of October, 1800, *may* file a notice of their claim with the Register; but that persons claiming either under the two first Sections of the Act, or under incomplete titles, *shall* do it under penalty of their claim being forever barred. You will perceive that the distinction is drawn from the different nature of the claims; that the first species is considered as already established, and not wanting any confirmation from the government of the United States; but it is necessary that the people should be also made to understand it; that they should know it is not intended to disturb their rights, founded on legal grants, and that the object of the first paragraph, is merely to enable them to have their grants recorded in an American office, if they shall think it expedient, and to prevent the possibility of the United States selling through mistake, lands which have already been legally granted.' "

In further discussing a Complete Spanish Grant, this court went on to say: "Morales in one of his letters—2 vol. Land Laws, 542, says:

" 'In order to obtain lands from the Exchequer (fisco) the custom is still pursued, which prevailed when the French were masters of the country; except in so far as that government and the intendency acted in concert; and no other form is or has been observed, than the presentation of a memorial by the petitioner, praying for a certain number of arpents and designating their location. In virtue of this, the Surveyor or Commandant of the Post, with the assistance of the neighbours, *makes the survey;* and if no objection be offered, puts the person in possession, and gives him the papers necessary for having his title drawn out:—This title is issued upon the strength of these papers, a minute of it being preserved in the office in order that it be noted in the book of grants.' * * *

*"It is certain * * * that a survey and possession were indispensable to the issuing of a title in proper form. * * *"* (Italics here and elsewhere are ours.)

There was filed in evidence a patent from the United States government to Sosthene Roman, dated August 30, 1878, which recites that the Register and Receiver of the Land Office at New Orleans, Louisiana, acting under the authority of

the first section of the act of Congress approved on February 6, 1835, entitled "An Act for the final adjustment of claims to lands in the state of Louisiana" (4 Stat. 749), confirmed the claim of Sosthene Roman to Section 34 under the authority of act of Congress approved July 4, 1836, entitled "An Act confirming claims to land in the State of Louisiana" (6 Stat. 682).

The act of February 6, 1835, under which the Register of the Land Office at New Orleans acted, reads in part as follows: "That any person or persons having claims to lands in the state of Louisiana, *whose claims have been recognized by former laws as valid,* but which have not heretofore been confirmed to the grantees or their legal representatives, be, and they are hereby, authorized to present their claims to the register * * *."

And the act of July 4, 1836, confirmed the grant to the said Sosthene Roman.

The above facts, in our opinion, conclusively show that Sosthene Roman was the owner of a Complete Spanish Grant, which required no confirmation to give it validity under our laws. But, pursuant to the authority of the various acts of Congress which provided that such grantee might file a notice of his claim and have his grant recognized in the American office, if he deemed it expedient, Roman had his grant confirmed, and in due course his patent thereto issued.

Since Roman had a Complete Spanish Grant, it naturally follows that this tract had been surveyed before title thereto had been granted by the Spanish government.

Since this Roman Grant had been surveyed, it follows also that the lower or east line of this Complete Spanish Grant was a monumented line, surveyed on the ground, and *was in existence at the time Evans made his survey in 1830.*

Our conclusion that there was such a monumented line on the ground is borne out by the testimony of the civil engineers, one stating that in his opinion there was such a monumented line in existence in 1832 and the other stating that he personally had seen a tree on the line in question marked with the date 1756, which he stated he believed was the year of the survey.

The term "monument" is defined in 8 American Jurisprudence, under "Boundaries", Section 4, page 747, as follows: "The term 'monument' when used with reference to boundaries indicates a permanent object which may be either a natural or an artificial one. Natural objects, artificial objects, and adjacent boundaries are all in a general sense termed monuments by the courts, although they may be of unequal dignity among themselves. Natural monuments include such natural objects as mountains, streams, rivers, creeks, springs, trees, etc. Artificial objects and monuments consist of marked lines, stakes, roads, fences, buildings, and similar matters marked or placed on the ground by the hand of man. * * * The certain and locative calls of adjoining landowners are treated as a sort of natural monument, although not so decisive as other natural monuments such as streams, etc."

In Rutherford v. Tracy et al., 48 Mo. 325, 8 Am.Rep. 104, the property conveyed was described as "Lot No. 3 in block 87, in the old town of Hudson, now Macon; beginning at the northeast corner * * *", etc. In the opinion we find the following expression: "The Supreme Court of the United States say that it is a universal rule that whenever natural or permanent objects are embraced in the calls of a patent or survey, these have absolute control, and both course and distance must yield to their influence. (Brown et al. v. Huger, 21 How. [305], 306 [16 L.Ed. 125])."

Still further in the opinion the court said: "The designation of the lot by its number must be regarded as the prominent object or monument; and where there is uncertainty, the monument must prevail over the description by courses and distances."

■ It is true that the patent in the case at bar describes the property as "Lot No. 3 Sec. 32 Township 13 S. Range 18 E. 88.25 [acres]", and in such a case the plat and field notes of the public survey become and are a part of the description. McClintock v. Rogers, 11 Ill. 279.

■ In Meyer v. Comegys, 147 La. 851, 86 So. 307, we find the rule to be that the legal guides for determining the question of boundary or the location of a land line, in their order and importance, are natural monuments, artificial monuments, distances, courses, and quantity, the controlling consideration being the intention of the parties. Nattin v. Glassell, 156 La. 423, 100 So. 609; Administrators of Tulane Educational Fund v. Stair et al., 148 La. 11, 86 So. 595; Mills v. Jordan, 212 Ala. 81, 101 So. 730; Miller & Lux, Inc., v. Secara et al., 193 Cal. 755, 227 P. 171.

■ Counsel for plaintiff contend that the patent conveyed unto the patentee, Sosthene Roman, 88.25 acres, and that, if we accept defendant's contention, the amount of the acreage as set forth in the patent will be greatly increased. The answer to plaintiff's contention is found in the case of Veve y Diaz v. Sanchez, 226 U.S. 234, 33 S.Ct. 36, 39, 57 L.Ed. 201, where the court said that the rule is "that calls for quantity must yield to the more certain and locative lines of the adjoining owners. Such lines are certain, or they can be made certain, and may be platted so as to show the exact course and distance. They are treated as a sort of natural monument, and must prevail over the more general and less distinct designation by quantity. Bartlett Land & Lumber Co. v. Saunders, 103 U.S. 316, 26 L. Ed. 546; Whiting v. Dewey, 15 Pick. [428], 434; Cox v. McGowan, 116 N.C. [131], 135, 21 S.E. 108; Reed v. [Proprietors of] Locks & Canals, 8 How. [274], 289, 12 L.Ed. [1077] 1083; Leonard v. Forbing, 109 La. 220, 33 So. 203".

■ The object in all boundary questions is to find some certain evidence of what particular land was intended to be conveyed, and in 8 American Jurisprudence, under "Boundaries", Section 3, page 747, we find the following statement: "In localities which are covered by the government survey system, land is gener-

ally described by reference to the subdivision used in this system. In the event that two or more of the descriptive elements used conflict or are inconsistent with the others, resort is first to be had to natural objects or landmarks, next to artificial marks, then to adjacent boundaries, and then to courses and distances, unless it appears that mistakes exist in respect to the calls, in which event an inferior means of location may control a higher one. *The rule should be adopted which is most consistent with the intention of the grant."*

■ The chain of title attached to defendant's answer shows that Sosthene Roman had title to Lot 3 of Section 32 and to Section 34, Township 13 South, Range 18 East, having acquired Lot 3 from the State of Louisiana by state patent dated 1855, and Section 34 by United States patent dated 1878. As pointed out hereinabove, Roman was the owner of a Complete Spanish Grant, being designated by United States survey as Section 34. Although the patent to Section 34 was not issued until 1878, Sosthene Roman was the owner of Section 34, known as the Roman Grant, and, in making application for a patent to Lot 3 of Section 32, we think there is no doubt that he intended to acquire property adjacent to the Roman Grant, as designated and shown on the Evans plat of 1832, being the only government survey in existence at that time of the township in question, which map or plat clearly shows the lower or eastern line of the Roman Grant to be the western

boundary of Lot 3. To us it would seem unreasonable, under these circumstances, for Roman to make application for a patent to Lot 3 if he had believed that there would be a small strip of land between the boundaries of the two pieces of property, which strip would have belonged at that time to the State and could have been acquired by patent also. The only information available to Roman was the map or plat in existence at that time, showing the two pieces of property to be adjacent.

It is true, as pointed out in brief by counsel for defendant, that whoever in the Land Office of the United States prepared the Evans map or plat did not show the Sosthene Roman Grant in the exact location at which it was later found to exist on the ground, but, as counsel stated, one fact is certain, and that is that it was the intention of whoever did the plotting that Lot 3 should have the Roman Grant as its western boundary, and that whoever prepared that plat was thoroughly familiar with said grant, as it is shown by the table of contents in the plat of 1832 as belonging to Sosthene Z. Roman and containing an area of 466.57 acres. And, when Lot 3 was patented to Roman, it was patented according to this plat, with its western boundary being the eastern or lower line of the Sosthene Roman Grant, Section 34.

Plaintiff calls our attention to the fact that the state patent was issued to Roman for only 88.25 acres, and that the State was paid for that acreage, and cites 11 Corpus Juris Secundum, Boundaries, § 53,.

subsec. c, page 625, to the effect that, "where the location of land is vague and uncertain, it will afford no basis for a call, as an adjoiner, that would outrank a specific call for quantity".

In Bender v. Chew, 129 La. 849, 56 So. 1023, 1025, this court, in speaking of the identification of land by acreage, said that "such method of identification is considered the weakest; it yields to every other method". See also W. B. Thompson & Co. v. McNair et al., 199 La. 918, 7 So. 2d 184.

The lower or eastern boundary of the Sosthene Roman Grant, as surveyed and found on the ground, was approximately 10.71 chains to the west of the western boundary of Lot 3 as fixed by the lower court, and, in the event the reverse had been true and said line should have been found actually to exist on the ground approximately 10.71 chains to the east of said western line of Lot 3 as determined by the judgment of the court below, there could be no doubt that the east or lower line of the Roman Grant, as thus established on the ground, would constitute the western boundary of Lot 3, and that the acreage of this particular lot would be reduced accordingly. For no one could argue that the owner of the Spanish Grant was not entitled to that grant with the boundry thereof as surveyed and established on the ground.

Ordinarily, a regular section of land in place is a square area measuring 80 chains on each side and containing 640 acres. The law on the subject of government

surveys provides that every township shall be divided into 36 regular or square sections, but this arrangement cannot be carried out in surveying townships containing obstructions such as navigable bodies of water or private land grants, and in such case, when the United States deputy surveyor comes in contact with such an obstruction, it is necessary to lay out only a fraction of a regular section.

An examination of the plat of 1832 discloses that Section 32 is a fractional section. This is necessarily due to the fact that, in the preparation of the map or plat in the Land Office of the United States government, where said fractional section was divided into Lots 1, 2, and 3, consideration was given to Evans' field notes showing the south boundary to be the meander of Lac des Allemands, and to the existence of a private land grant on the west, designated as the Complete Spanish Grant, or Section 34, which grant encroached on Section 32. These facts further indicate to us that it was the intention of the United States Land Office that the east line of Section 34 should constitute the western boundary of Lot 3 of Section 32.

According to the survey made by Lovell and Landry on July 2, 1943, referred to hereinabove, the lower or east line of the Sosthene Roman Grant, as determined, located, and fixed by these engineers on the ground, intersects the west boundary of Section 32 at a point a short distance south of the northwest corner of that section. It goes without saying that defendant

herein is not entitled to any land under its patent to Lot 3 of Section 32 outside the area of said section, and consequently this small portion of the west boundary of Section 32 also constitutes a portion of the west boundary of Lot 3 of Section 32.

We are of the opinion that Lot 3 of Section 32 must be bounded on the north by the north section line of Section 32, on the east by the north-and-south center section line, on the south by the meander of Lac des Allemands as surveyed by Evans, and on the west by the west line of Section 32 and by the lower or eastern line of the Sosthene Roman Grant as surveyed and established on the ground.

Plaintiff relies on the case of Phelps v. Wilson, 1840, in which case the plaintiff was seeking to recover a diminution in price under Article 2470 of the Civil Code of 1825 (now Article 2494, found in Book III, Title VII, Chapter 6, "Of the Obligations of the Seller"), because a survey of the fractional governmental section which he had purchased showed that the real measurement came short of the quantity expressed in the act of sale by a one-twentieth part. Defendant urged that the sale was one per aversionem, under which he was not bound to account for any deficiency in the quantity of the land sold. The court held that such a sale was not a sale per aversionem, and gave judgment for plaintiff.

We concede that a sale of a body of land designated and described as a governmental subdivision, such as a section or fractional section, is not a sale per aversionem, for, in order that a sale be considered as such, it is necessary that the object should be designated in the act of conveyance by adjoining tenements and sold from fixed boundary to fixed boundary. Revised Civil Code, Article 854. In the cited case, there was no question of boundary involved, as the boundaries were definitely fixed and ascertainable by government map or survey. The decision in the instant case, however, does not depend upon whether or not the sale is one per aversionem, but upon the location of the western boundary of Lot 3 of Section 32, which location is primarily governed by the intention of the grant.

For the reasons assigned, it is now ordered that the judgment appealed from be amended so as to decree plaintiff, the City of New Orleans, individually and as trustee, to be the true and lawful owner of the following described property: Lots 1, 2, 3, 4, and 6 and the East ½ of the Northwest ¼ of Section 32, Township 13 South, Range 18 East, Parish of St. John the Baptist, Louisiana, in accordance with the United States township plat approved September 20, 1859; less and except the tract or parcel of land bounded on the north by the north section line of said section, on the east by the north-and-south center section line, on the south by the Evans meander of Lac des Allemands, and on the west by the west line of Section 32 and the east or lower line of the Complete Spanish Grant, Section 34, as that line was surveyed and found to exist on the ground, which tract is decreed to be Lot 3 of Section 32 as patented to Sosthene

Roman on February 15, 1855; and, as thus amended, the judgment is affirmed and made the final judgment of this court; plaintiff, City of New Orleans, to pay all costs.

HIGGINS, Justice (dissenting).

My views are in accord with those of the trial judge, who accepted as correct the Lovell survey in fixing the boundary of Lot 3 of Section 32, Township 13 S., Range 18 E., S. Eastern District. It is conceded that Roman was issued a patent for 88.25 acres only and the State was paid for the land on an acreage basis. Under the majority holding, the defendant will obtain about 50 additional acres of land without paying any sum whatsoever therefor. Certainly, it was not the intention of the parties that the patentee would receive this additional land without giving any consideration for it. Since the majority opinion is predicated upon the intentions of the parties, it is difficult to understand how it could be said that the patentee would receive gratis more than one-half of the total acreage which was sold to him.

The description of the land in the patent is as follows: "Lot No. 3 of Sec. 32 Township 13 S. Range 18 E. 88.25 (acres) S. Eastern District". Clearly, as appears from the above description, this is not a sale per aversionem or by metes and bounds and, therefore, the defendant cannot be held to have acquired the additional 50 acres on that theory.

For these reasons, I respectfully dissent.