TATE, Judge
(dissenting).
The writer respectfully dissents. In my opinion, my conscientious and learned brothers of the majority fell into error of law by interpreting the title deed according to one call only, which was in conflict with three other calls in the same deed, instead of by interpreting the deed as a whole; and also by mechanically applying •the presumption against the seller in case of ambiguity, LSA-C.C. Art. 2474, instead ■of applying as well other pertinent rules of construction to determine the intention ■of the parties as expressed by the deed.
Rules of construction, reliance upon calls •in the deed, and other interpretative approaches, are all designed only to accomplish the primary aim of judicial interpretation of contracts — that is, to determine the intent of the parties to the deed as expressed by the words in the deed. LSA-•C.C. Arts. 1945 and following. Mechan-fical reliance upon one rule of construction only, or upon one call of the deed only, overlooks this fundamental purpose of judicial construction of contested deeds.
For the reasons stated by my brother Hood’s dissent to the original opinion, I agree with the trial court that the boundary between the plaintiff Union Bank and the defendant Mr. Roy should be fixed at a point “108 point from the Southeast corner of the Union Bank lot along Mark Street”, as called for by the deed. This is made manifest when the descriptive calls of the deed are construed as a whole, instead of by seizing upon one call only as indicating the intent of the parties.
If the boundary between the tracts is fixed 108 feet from the corner of the seller’s lot according to such call in the deed, then the following other calls of the title deed are correct: the defendant Roy then acquired the remaining western 71 feet of the plaintiff’s 179 feet (which had been acquired two years before), and he was then bounded on his west by a lot belonging to the Avoyelles Trust Company (another bank), both as called for by the deed; and all other calls of the deed are likewise correct.
If this is not done — and if instead the boundary is fixed at ten feet from the plaintiff’s west wall, as done by our majority opinion — , then not only .is the .108-foot call of the deed incorrect; but then also, the defendant Roy either acquired 74 feet along Mark Street (instead of 71 as called for by the d'eed), or else he was not bounded on the west by the Avoyelles Trust property (as called for by the deed) —which latter would mean that the plaintiff Union Bank had sold Mr. Roy a 71-foot lot but had retained (unknown to any of the parties or the public over the last 27 years) a useless three-foot strip on the far side of the Roy lot separating it from the Avoyelles Trust lot.
By allowing full and complete weight to the single call “ten (10) feet back of the back wall of the present Union Bank Build *723 ing”, the majority has thus completely ignored (A) the at least equally definite call equating the locating of this starting point as “one hundred eight (108) feet from the Southeast corner of the Union Bank lot along Mark Street”, as well as (B) the call in the deed that the southern boundary shall from this point include “a distance of seventy-one (71) feet [only] from said point along Mark Street”, together with (C) the description in the deed that the Roy lot shall be bounded “West by property belonging to the Avoyelles Trust and Savings Bank.” [1]
Thus, the call for a starting point “ten (10) feet back of the back wall * * * which is one hundred eight (108) feet from the Southeast corner of the Union Bank lot”, should be interpreted in the light of the deed as a whole. “All clauses of agreements are interpreted the one by the other, giving to each the sense that results from the entire act.” LSA-C.C. Art. 1955.
Viewed in this light, the reference to the starting point as being ten feet back of the back wall, must yield to the three more definite calls, if the “ten foot” reference is regarded indeed as a definite and conflicting call instead of as an estimate.
Actually, from reading the 1935 deed by which Union Bank acquired the 179-foot parent lot, in conjunction with the 1937 deed by which the defendant Mr. Roy acquired the western 71 feet of this lot, it seems obvious that the parties intended for Mr. Roy to purchase the property beyond the western curbing of the driveway, and that the discrepancies in the deed resulted from the parties’ incorrect assumption that this western edge of the driveway (correctly and definitely fixed by the Roy deed as 108 feet from the corner of the lot) was only ten feet from the rear wall of the bank building. The Messick survey attached to the 1935 deed, for instance, shows this concrete curbing as the “driveway wall”, and the 1935 deed itself indicates that this western side of the driveway was 108 feet from the southeast corner of the Union Bank lot.
My sincere and conscientious brethren of the majority fell into error, in my opinion, by finding the deed in question to be ambiguous because of the single conflicting call (which I think is easily explained by reference to the title deeds), and by then finding that the deed must be construed against the vendor, LSA-C.C. Art. 2474.
In the first place, construed as a whole, I do not believe the deed to be ambiguous, LSA-C.C. Arts. 1945(3), 1955. However, even if ambiguous, the rule relied upon by the majority is not the sole and monopolistic rule which must be applied to determine the intention of the parties — after all, the overriding aim of all rules of interpretation. Another equally important rule, peculiarly applicable here, is that the meaning of ambiguous contracts may be ascertained from the practical construction given it by the parties through their express or implied assent in the manner of its execution, LSA-C.C. Art. 1956 — and in the present case, we find that the Union Bank exercised physical possession up to the concrete driveway curbing 108 feet from the southeast corner, for instance, piling building debris on the disputed three feet over several months, many years gravelling and maintaining the strip, burning trash by its janitor on it for years, etc., and in fact treating the disputed strip as its own during the some 27 years following the supposed sale of it to the defendant in 1937. To the contrary, the defendant never exercised physical possession over the strip until a few days before this suit.
As stated in Shoreline Oil Corporation v. Guy, La.App. 2 Cir., 189 So. 348, 351: “The interpretation of the ambigous fea *724 tures of the instrument by the parties thereto immediately after its execution, at a time non-suspicious, when the facts were fresh, is the safest index to the instrument’s true meaning. Guy’s [i. e., the purchaser’s] silence for over a quarter of a century strongly serves to confirm the correctness of his original understanding of the instrument’s true purpose.”
Since I believe the meaning of the deed to be clearly established according to ordinary deed-interpretation principles, it is unnecessary for me to discuss the burden placed upon the present defendant, who converted this possessory action into a petitory suit by claiming title, thus admitting the undisturbed possession of the plaintiff Bank. The defendant thus has the burden of proving a good title against the world, as the plaintiff Bank was in possession of the disputed strip. LSA-C.C.P. Art. 3653(1).
For the reasons perhaps too full}' stated, I respectfully dissent from the refusal of a rehearing by my esteemed brethren of the majority herein.

. This call for the Roy lot to he bounded by the adjacent Avoyelles Trust lot is regarded as a definite call in the nature of a natural monument, which prevails over distanees or quantities. City of New Orleans v. Joseph Rathborne Land Co., 209 La. 93, 24 So.2d 275.