liWICKER, Judge.
This is a suit for declaratory judgment by Harry Austin against the St. James Methodist Church of Hahnville (hereinafter “St. James”), in which petitioner seeks judgment limiting defendant’s right to control use of a cemetery known as the Hahnville Cemetery. From judgment in favor of petitioner, defendant takes this appeal. We reverse.
Austin alleged that St. James is operating a public cemetery in Hahnville, Louisiana, but has been denying access and demanding payment for use of the cemetery without the right to do so. St. James alleged it has title to the land on which the cemetery is situated and has the right to regulate use of the cemetery, including the payment to St. James of a reasonable sum to maintain the cemetery.
The issues on appeal are whether petitioner sufficiently proved that St. James did not own the property it claims as a cemetery *1207 and, if so, whether St. James, as owner of the cemetery, has the right to promulgate reasonable rules and regulations governing the operation thereof.
laFACTS
At trial Harry Austin testified he is 70 years old and his family has used this cemetery all his lifetime.[1] He said people from Richbend were buried in the Hahnville Cemetery: “[A]ll the people that weren’t Catholic, black folks along that — between Taft and Hahnville used that cemetery.” His father and grandfather are buried there and family members kept the graves clean. He handled five burials from 1958 to 1978 and never had to pay anyone to make use of the cemetery. Within the last 10 years, however, when his brothers and sisters had to be buried, the Methodist Church started demanding a price. He was never aware that the cemetery belonged to the Methodist church, although there is an adjoining cemetery operated by the Bethlehem Church. He knows of no one else who has had problems with the Methodist Church charging a fee.
Tommy Austin, testifying on behalf of plaintiff, stated he is 57 years old and when his father died, two or three years before the trial, he had to pay a $200 burial fee to the St. James Methodist Church. When his uncle Perkins Austin died, police prevented them from going into the graveyard for a while because the burial fee had not been paid.
Also testifying for plaintiff was Clarence Gros, age 72, who stated he had lived in St. Charles Parish almost all his life. His grandmother and an uncle are buried in the Hahnville Cemetery, which has been a graveyard as long as he remembers. He knows of three burials in which the family had to pay the Methodist Church a fee — Perkins Austin, Tom Austin, and Victor Ramson. He always thought that area was Richbend’s cemetery.
Charles J. Oubre, Jr. testified for the defendant. He is a grandson of Ulysse J. Keller, who sold the cemetery land to St. James in 1928. In 1968 Oubre bought the interests of the other Keller heirs in Square 14 and had the property cleaned up to the shell road, but not including the cemetery section. In 1970 several members of the St. James Methodist Church came to see him about getting a more definite description of the land his grandfather conveyed to St. James in 1928. The result of that meeting was a boundary agreement. Hejjsold off the remainder of Square 14 to others, except for a 35 foot by 100 foot piece he still owns. That piece of land has seven graves on it, but is outside the boundaries delineated for the St. James Methodist Church.
Delores J. Pierre, secretary of St. James, testified that she was born in 1933 and that the cemetery has been there since or before she was born. St. James charges a fee of $200 for burials and designates a burial plot for the burial. Some families have a certain area in which their family is buried, but if there is no plot remaining in that area St. James selects another area for the new burial. St. James did not begin collecting the burial fee until within the last 10 years; the fee first was $100, but was increased to $200 to cover maintenance costs. The fee is charged only to people who are not members of St. James. Members of other Protestant church congregations in the area also use the cemetery.
Mrs. Pierre denied knowing anything about a certain area of the cemetery being used by the Richbend community for burials. She knew there is an area in which the Austin family buries their people, but stated there are other families buried there also. Those people are not members of St. James’ congregation. The problems with the Austin family were not due to the fee, but were because they did not want their burials in the area St. James asked them to use. The gravesites the Austins want to use are blocking the entrance to graves of other people buried behind them. She said that about half the land in the cemetery has been used for burials so far. The portion not being used has weeds and bushes on it. There is a fence installed to the first part of the cemetery and the Bethlehem Church has a cemetery in front of the Hahnville Cemetery.
*1208 Mrs. Pierre further testified that St. James needs the money it charges to keep the cemetery clean, cut the grass, and pay for insurance. When funds obtained from burials are insufficient, members of St. James’ small congregation must come up with the remainder. St. James does not object to nonmembers of its congregation being buried on the property. All St. James’ records pertaining to the cemetery were destroyed by vandalism a couple of years before the trial, however.
14The Reverend Barry Whittington, the current pastor of St. James United Methodist Church, testified that St. James feels it has the right to designate where people can be buried in the cemetery because the cemetery is on St. James’ land. The problem with the Austins is that they want to choose where to bury their dead and they disagreed with St. James’ designated burial plots. He understood the Austins did not object to payment of the fee, they just felt that it gave them the right to select the burial plot.
St. James stipulated that the cemetery is a public cemetery and has been a public cemetery for over 100 years.
The documentary exhibits established the following:
(1) On June 2, 1928 the St. James Chapel Methodist Episcopal Church (a prior incarnation of the defendant Church) purchased from Ulysse J. Keller a portion of ground described as follows:
A CERTAIN LOT OR PORTION OF GROUND, situated in the Village of Hahn-ville, Parish of St. Charles, La., and being situated within Square Fourteen of said Village of Hahnville as shown on a plan of 0. McLeran, Parish Surveyor, dated 1877. Being the same plot of ground now being used by the purchasers herein as a Cemetery, and known as the Hahnville Cemetery.
That act is recorded at COB BB, Folio 83, St. Charles Parish.
(2) On May 20, 1965, a judgment of possession was rendered in the successions of Ulysse J. Keller and Felicie Pujo Keller, in which the 1928 sale of the Hahnville Cemetery to St. James Methodist Church was recognized and was excepted from the property conveyed to the Keller heirs. That judgment is recorded at COB 46, Folio 663.
(3) On June 1, 1967, the members of the St. James Methodist Church, sometimes known as the St. James Chapel Methodist Episcopal Church, conveyed to the St. James Methodist Church of Hahnville two properties, one of them being the land purchased from Ulysse Keller in 1928, in an act recorded at COB 68, Folio 25.
(4) On May 9,1968 Ulysse Keller’s successors conveyed to Charles Oubre, Jr. all their interests in Lots 4, 5, 6, 7, 8, 9, 10 and 11 of Square 14 of the Town of Hahnville. In that act Lots 4, 5, 6, 7 and 8 are described as having a front on Morgan Street of 104.5 feet |5by a depth of 314 feet, while Lots 9, 10 and 11 are described as having a front on Love-joy Street of 104-1 feet by a depth of 209 feet. That act, recorded at COB 76, Folio 313, also recognized the 1928 sale to the St. James Chapel Methodist Episcopal Church.
(5) On February 6, 1970, Charles Oubre, Jr. and St. James Methodist Church entered into a boundary agreement, acknowledging both the 1968 conveyance to Oubre and the 1928 sale by Keller to St. James, and stating further:
That the boundaries of the said cemetery are undefined and vague and in order to fix the boundaries os [sic] said cemetery so that there may be hereafter no further dispute or misunderstanding and so that the same may be forever fixed, the appear-ers do hereby declare and agree that the correct boundary lines of the Hahnville Cemetery of St. James Methodist Church in Square 14 of the Village of Hahnville is described as follows:
Beginning on the rear comer between Lots 3 and 4 and thence S68-45W for a distance of 631.5 feet thence in a northerly direction for a distance of 124 feet, thence in a northeasterly direction for a distance of 631.5 feet, thence S21-15E for a distance of 124 feet to the point of beginning.
Said boundaries are outlined in “Red” on a plan of survey drawn by E.M. Collier, C.E. dated May 4,1968 entitled “Survey of Lots 4-5-6-7-8-9-10-11, Block 14 of Hahnville Subdivision”, a copy of which is attached hereto and made part hereof.
*1209 The Collier survey to which the boundary agreement refers shows the cemetery as occupying portions of each of Lots 4, 5, 6, 7, 8, 9 and 10, with a shell road running through the northerly side. The boundary agreement is recorded at COB 86, Folio 223.
Following admission of these exhibits and after hearing the testimony, the trial court rendered judgment in favor of plaintiff and against defendant declaring,
[Defendant has control and dominion over only that portion of Square 14, Town of Hahnville, which it can satisfactorily identify to this court as having been acquired by just title. Until such proof is provided, defendant has no power or authority to manage any part of the property known as Hahnville Cemetery.
leLAW AND ANALYSIS
In Vidrine v. Vidrine, 225 So.2d 691, 697-698 (La.App. 3rd Cir.1969), the court concluded that a graveyard becomes dedicated for cemetery purposes by virtue of the long and exclusive usage of this property for these purposes. The court held:
This dedication is in the nature of an irrevocable covenant running with the land. It is a real right, not a servitude or usufruct, but an implied contractual relationship that binds the owner irrevocably.
The owner is bound to the following: (1) He cannot remove or disturb any grave. (2) Relatives and friends have unrestricted rights to visit and care for the graves. (3) Property included in the cemetery cannot be used by the owner for any purpose inconsistent with cemetery purposes. (4) The owner cannot reduce the size of the lands set apart as a cemetery.
On the other hand, the owner retains ownership of the land, and he may: (1) Charge for the lots or he may donate the lots. (2) Make and enforce regulations as to where burial plots will be placed. (3) Make and enforce regulations as to how burial shall be made so long as those regulations are consistent with the manner in which burials have been accomplished in that cemetery.
Plaintiff has conceded in brief that the Vidrine ease correctly sets forth the cemetery owner’s right to regulate and that the owner of a cemetery has the right to make and enforce regulations pertaining to the ownership of its property. Accordingly, we need not address that question. The real issue we must determine is whether the defendant owns all the property on which the cemetery is located.
Plaintiff argues that the title conveyed to St. James was of a lot in Square 14, which cannot be more than 104.5 feet wide according to the surveys to which the acts of title refer, so that St. James has been exercising control over all of the Hahnville Cemetery without owning all of the cemetery.
The object in all boundary questions is to find some certain evidence of what particular land was intended to be conveyed. City of New Orleans v. Joseph Rathbome Land Co., 209 La. 93, 24 So.2d 275, 281 (1945). In resolving boundary disputes, the principal judicial duty and objective is to determine and implement the intention of the parties and the rules |7of interpretation set forth in statutes and jurisprudence must be considered as auxiliary rather than as absolutely controlling. Hurst v. Ricard, 514 So.2d 14,17 (La.1987).
Where there are conflicting calls in a deed, and the first call is followed by a general description which manifestly was intended to be a summing up of the intention of the parties as to the premises conveyed, the general description controls all prior words or phrases used, if it is sufficient to identify with certainty the premises conveyed. Williams v. James, 188 La. 884, 178 So. 384, 386 (1938). The legal guides for determining the question of boundary or the location of a land line, in their order and importance, are natural monuments, artificial monuments, distances, courses, and quantity, the controlling consideration being the intention of the parties. City of New Orleans v. Joseph Rathbome Land Co., supra.
It is clear to us that the 1928 act of sale between Ulysse Keller and St. James’ ancestor-in-title contemplated not the sale of one “lot” in Square 14 of Hahnville, but rather of the “portion of ground” then being used as a cemetery and known as the Hahnville Cemetery. That act was recorded in the public *1210 records of the parish and, therefore, was effective against third persons when filed for registry. La.Civ.Code arts. 617,1839. Similarly, the 1970 act between Charles Oubre and St. James fixing the boundaries of the Hahnville Cemetery was filed in the parish’s public records and thus was effective against third parties from that date. Id.; La.Civ. Code art. 789.
Owners of contiguous lands may enter into a written agreement designating in it a boundary or line of division between their lands. When recorded, this agreement may be asserted against third persons in the same way as any other agreement affecting immovable property. The effect of such an agreement is to convey ownership to each party up to the designated line. * ⅜ * Such an agreement creates a new boundary. * * *
Comment (c) following La.Civ.Code art. 789; Duplantis v. Cekan, 140 So.2d 409, 413 (La. App. 1st Cir.1962).
Considering the above, we conclude the trial court was clearly wrong in finding that defendant does not have just title to the Hahnville Cemetery as set forth in the 1928 act of sale and the 1970 boundary agreement.
^JaDECREE.
Accordingly, the judgment of the district court is reversed. Judgment is rendered in favor of defendant and against plaintiff, declaring that the St. James Methodist Church of Hahnville is the owner of the Hahnville Cemetery, situated in Square 14 of the Town of Hahnville and described as follows:
Beginning on the rear corner between Lots 3 and 4 and thence S68-45W for a distance of 631.5 feet thence in a northerly direction for a distance of 124 feet, thence in a northeasterly direction for a distance of 631.5 feet, thence S21-15E for a distance of 124 feet to the point of beginning. Said boundaries are outlined in “Red” on a plan of survey drawn by E.M. Collier, C.E., dated May 4, 1968, entitled “Survey of Lots 4-5-6-7-8-9-10-11, Block 14 of Hahnville Subdivision,” a copy of which is attached to the Boundary Agreement by Charles Oubre, Jr. and St. James Methodist Church, dated February 6,1970, before Edward A. Dufresne, Notary Public, registered in COB 36, Folio 313.
It is further declared that as owner of the aforesaid Hahnville Cemetery, St. James Methodist Church of Hahnville has the following duties and rights:
It cannot remove or disturb any grave.
Relatives and friends of the persons buried in the cemetery have unrestricted rights to visit and care for the graves.
Property included in the cemetery cannot be used by the owner for any purpose inconsistent with cemetery purposes.
The owner cannot reduce the size of the lands set apart as a cemetery.
The owner may charge for the lots or it may donate the lots.
The owner may make and enforce regulations as to where burial plots will be placed.
The owner may make and enforce regulations as to how burial shall be made so long as those regulations are consistent with the manner in which burials have been accomplished in that cemetery.
The costs of this appeal are assessed against the plaintiff-appellee.

REVERSED AND RENDERED.

. Perkins Austin, Harry’s uncle, also was a plaintiff, but he died prior to trial.