MARION F. EDWARDS, Chief Judge.
| aThe present appeal is taken from the grant of summary judgment in favor of the plaintifi/appellee, Christopher George Haines (“Haines”), and against the defendant/appellant, St. Joseph Baptist Church (“St. Joseph”). St. Joseph also urges that its Motion for Summary Judgment and its Motion for New Trial were improperly denied.
The matter arises as the result of a Suit to Quiet Title filed by Haines against St. Joseph. In the petition, Haines stated that he was the owner of immovable property in the Saddler Subdivision, Lots Nos. 19 and 20, at 5613 Fourth Street in Marre-ro, Louisiana. He urged that he had pur *1257 chased the property from the Succession of Josephine Trupiano, wife of/and Frank Romano, in 1995. His predecessor in title had, in turn, purchased the lots in 1928 and 1929, and, in the early 1940’s, had constructed their family home on the lots. It was admitted that the structure encroached on the adjoining lot, 210-A, owned by St. Joseph. Haines urged that he and his ancestors in title had maintained open, peaceful, and uninterrupted possession and that he should be recognized as owner of the encroachment by virtue of thirty years of acquisitive prescription. St. Joseph |sanswered, urging that the encroachment constituted a trespass, and that lot 210-A is and has been used as a cemetery, is in the public domain, and is not subject to acquisition by possession.
Haines filed a Motion for Summary Judgment, following which St. Joseph also moved for summary judgment in its favor. The trial court conducted a hearing and subsequently granted Haines’ motion while denying that of St. Joseph. St. Joseph has appealed.
Haines filed a copy of the 1928 Act of Sale of Lot 20 from Westminster Presbyterian Church of New Orleans to Mr. Romano as well as a copy of the 1929 Act of Sale of Lot 19 from Dominick Saladino to Mr. Romano. He also filed affidavits from Romano’s granddaughter and grandson, attesting that the Romanos had owned Lots 19 and 20, and they had built the existing structure in the 1940’s as their family home. A copy of the 1952 assessment roll for the Parish of Jefferson was filed, evidencing Mr. Romano as owner of the lots and improvements, as well as a copy of the 1995 act of sale to Haines. A copy of a 1995 survey indicates the improvements to the lots extend onto Lot 210-A, for a distance of eleven feet. Finally, Haines attached a copy of a Quitclaim deed dated January 80, 1996, in which Marrero Land and Improvement Association transferred Lot 210-A to St. Joseph.
In support of its motion, St. Joseph attached a copy of a survey done in 1996 evidencing Lot 210-A as a cemetery that contained at least one grave. Further, it attached an Affidavit of Ownership passed in March 1988, from the Rev. Taitón W. Lewis, former Pastor of St. Joseph, establishing that the lot has been known as the St. Joseph Cemetery and that the church had participated in many burial rites there. The affidavit references a 1921 Plan of the “Robinson Avenue Subdivision,” and describes the cemetery plot as the “last lot facing Fourth Street ... next to Lot |4No. 210.” According to the affidavit, the map indicates an official dedication of the cemetery plot, and the church has exercised control over it and been recognized as the owner. The affidavit stated it was to be recorded registering the plot in the name of St. Joseph.
The transcript reveals the trial court found that, prior to the present laws passed in 1974 (presumably La. R.S. 8:1 et seq.), there was no specific delineation of “what constituted a cemetery, whether or not there was one indefinable headstone or not....” The trial court considered the date that the house was constructed and the “date of the dedication.” The court then found there was no law detailing cemetery uses, that is, “what they must contain and what they must indicate,” and granted summary judgment in favor of Haines while denying St. Joseph’s motion. In so doing, the court determined that, although the building did encroach on the lot in question, it “did not really violate the law regarding ... cemetery uses.” The judge concluded that Haines was not in violation of the law, and his boundary should be “that line that an engineer might *1258 draw that would encompass just the house and the slab it’s sitting on ... allowing for any easements that may exist and be concomitant with any building structures.”
Prior to- codification of cemetery laws, our jurisprudence determined the law regarding cemeteries. According to the cases, a graveyard becomes dedicated for cemetery purposes by virtue of the long and exclusive usage of this property for these purposes. The Third Circuit summed up the law as follows:
In Locke v. Lester, 78 So.2d 14 (La.App. 2nd Cir.1955), plaintiffs sought to determine the boundary between a cemetery and the neighboring landowner. Landowner contended that the cemetery had never been properly dedicated, but the record showed that for over fifty years there had been no restrictions or conditions imposed upon the right of anyone to be buried in the cemetery, and it was informally dedicated to the public. The Court stated:
‘We are of the opinion the reservation of said tract of land for use by the public as a burial ground or cemetery and its continuous use by [¡¿he general public since it was set apart as a burial ground, is legally sufficient to dedicate said property for public use. In Humphreys v. Bennett Oil Corporation, 1940, 195 La. 531, 197 So. 222, 227, where under consideration was a plot of ground which had been transferred to a church for church and cemetery purposes, the court held that by making herself a party to the deed the vendor showed unmistakably an intention to set the lot apart for church and cemetery purposes to be devoted and consecrated to those purposes only. In the opinion Justice Odom said:
‘It is our opinion, and we hold, that the dedication of this plot of ground for cemetery purposes was complete, and, since plaintiffs relied in good faith on the dedication made by the owners of the land and buried their relatives there under permits, it follows that they acquired rights therein which could not be divested by any subsequent disposition made of the property either by the fee owners or the churches, or both.
‘The one-acre plot of ground having been set apart for a cemetery and its use for that purpose having been accepted by these plaintiffs and many others, neither the fee owners nor the churches could later use, or empower another to use, it for any purpose inconsistent with the use for which it was dedicated.
[[Image here]]
‘Where the intent of the transferor has been to abandon certain property for public use and the property is used by the general public, the dedication thereof will be regarded as complete without necessity of formal acceptance by a public or quasi public corporation. (Citations omitted)
‘A parcel of land or property dedicated for use by the general public as a cemetery and which continues to serve that public purpose, is classified as a public thing under provisions of the LSA-Civil Code, and as such it is not susceptible of ownership, cannot be alienated and is not subject to prescription. LSA-Civil Code Articles 453, 454, 458, 481, 482 and 483. (other Citations omitted.) ⅜ ⅜ * ’ 78 So.2d 14, 15, 16.[1]
Summary judgments are reviewed on appeal de novo. An appellate court thus *1259 asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law.[2]
In the present matter, Haines contends that there is no evidence that the property in question was a cemetery until the Quitclaim deed was executed by Mar-rero Land Company in 1996. According to Haines, his ancestors in title had | ^peaceable uninterrupted possession for thirty years prior to that act and, therefore, La. C.C. art. 3486 applied to grant him title.
Our de novo review of the evidence of record discloses that St. Joseph has placed at least one material fact at issue, that is, how long has the subject property been a cemetery? The fact that it was transferred to St. Joseph by Quitclaim in 1996 does not put the question to rest. According to the affidavit of Rev. Lewis, the lot had been used for burial for many years prior to 1983, and there exists a survey evidencing its dedication as such at least as far back as 1921. If the dedication of the lot as a cemetery was complete prior to the thirty years asserted by the plaintiff, then, under the existing law, Haines’ ancestors in title could not assert acquisitive prescription. The jurisprudence quoted above appears to give St. Joseph standing to assert this action.[3] Also see Riverie v. Mills[4] wherein the First Circuit found that plaintiffs who had relatives buried in the cemetery had a right to bring an action for declaratory judgment to require the defendant to remove a fence allegedly encroaching on cemetery property.
The existence of this material fact precludes summary judgment in favor of either party at this time. Haines was not entitled to judgment as a matter of law.
Therefore, we reverse the summary judgment in favor of Haines, affirm the denial of summary judgment in favor of St. Joseph, and remand the matter to the trial court for further proceedings. Because we set aside the summary judgment, the judgment denying a new trial is moot.

AFFIRMED IN PART; REVERSED IN PART; REMANDED

. Vidrine v. Vidrine, 225 So.2d 691, 696-97 (La.App. 3 Cir.1969), writ refused, 254 La. 853, 227 So.2d 594 (1969). See also, In re St. James Methodist Church of Hahnville, 95-410 (La.App. 5 Cir. 12/27/95), 666 So.2d 1206, 1209, writ denied, 96-0278 (La.3/15/96), 669 So.2d 421.

. Wallace, v. Treasure Chest Casino, L.L.C., 05-484 (La.App. 5 Cir. 12/27/05), 920 So.2d 251, 254-55.

. Vidrine v. Vidrine, supra; Locke v. Lester, supra.

.481 So.2d 1050 (La.App. 1 Cir. 1985).